**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

*In re:*

*Application of the Reporters Committee for
Freedom of the Press for an Order Authorizing
the Release of Grand Jury Material Cited,
Quoted, or Referenced In the Report of Special
Counsel Robert S. Mueller III,*

1156 15th Street NW, Suite 1020
Washington, D.C. 20005

Miscellaneous Action No. _____

**<u>Oral Argument Requested</u>**

**APPLICATION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
FOR AN ORDER AUTHORIZING THE RELEASE OF GRAND JURY MATERIAL
CITED, QUOTED, OR REFERENCED
<u>IN THE REPORT OF SPECIAL COUNSEL ROBERT S. MUELLER III</u>**

The Reporters Committee for Freedom of the Press (the "Reporters Committee") is an unincorporated nonprofit association founded by leading journalists and lawyers in 1970 when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources.  Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.  The Reporters Committee has a longstanding interest, demonstrated throughout its fifty-year existence, in advocating for transparency in government, including for the rights of the press and the public to access government records.

Pursuant to Local Rule 57.6, the Reporters Committee hereby petitions this Court for an order authorizing the release of grand jury material cited, quoted, or referenced in the Report of Special Counsel Robert S. Mueller III (the "Special Counsel's Report") to the public.  To the extent necessary to facilitate this Court's ruling on its Application, the Reporters Committee further requests that the Court issue an order directing the Attorney General to lodge a copy of the Special Counsel's Report with the Court for *in camera* review.

## PRELIMINARY STATEMENT AND INTEREST OF THE APPLICANT

1.     The recently concluded investigation of Special Counsel Robert S. Mueller III inquired into fundamental questions about the strength and vitality of our democracy and electoral process.  The Special Counsel's two-year probe examined whether Russia interfered in the 2016 U.S. presidential election, whether the winner of that election, the current President of the United States, and/or members of his presidential campaign conspired with Russia to interfere in our nation's elections, and whether the President obstructed justice.  This was no ordinary secret grand jury investigation but rather one that was in many respects public and that has affected the entire country and all branches of the federal government.

1

2.      Upon conclusion of the investigation, the Special Counsel delivered to the Attorney General a nearly 400-page report.  Letter from Attorney Gen. William P. Barr to Sen. Lindsey Graham and Rep. Jerrold Nadler 2 (Mar. 29, 2019), *available at* https://wapo.st/2CL4B3k ("Mar. 29 Letter").  On March 24, 2019, the Attorney General delivered a letter to Congress that briefly summarized the report's "principal conclusions" in only four pages.  According to the Attorney General, Special Counsel Mueller "outlines the Russian effort to influence the election and documents crimes committed by persons associated with the Russian government in connection with those efforts."  Letter from Attorney Gen. William P. Barr to Sen. Lindsey Graham, Rep. Jerrold Nadler, Sen. Dianne Feinstein, and Rep. Doug Collins 1 (Mar. 24, 2019), *available at* https://wapo.st/2V7mi4i ("Mar. 24 Letter").  Mr. Barr further, quoting a sentence fragment from the report, states that the Special Counsel also concluded that the President and his campaign had not "conspired or coordinated" with the Russian government "in its election interference activities."  *Id.*  The Attorney General also stated that the Special Counsel made no conclusions as to whether the President had committed the crime of obstruction of justice, though the Special Counsel had not "exonerated" the President either.  *Id.* at 3.  The Attorney General then announced that he had made his own determination that "the evidence" was "not sufficient to establish that the President committed an obstruction-of-justice offense."  *Id.*  In subsequent days, the Attorney General stated that he would provide the Special Counsel's Report to Congress with certain information redacted, including unspecified grand jury material cited, quoted, or referenced in the report.  *See* Fed. R. Crim. P. 6(e); Mar. 29 Letter at 1.

3.      On March 27, 2019, three days after the Attorney General issued his four-page summary of the Special Counsel's Report, the Reporters Committee submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Attorney General, requesting access

to and a copy of the Special Counsel's Report in its entirety. *See* Ex. 1.[1] The Reporters Committee has a longstanding and demonstrated interest in supporting the newsgathering efforts of journalists and promoting transparent governance for the benefit of the public at large, and sought to advance those interests with its FOIA request.[2] The Attorney General, however, has already made clear that he will not—and maintains that he cannot—release the Special Counsel's Report in full. He has stated that he believes himself to be bound by obligations imposed by Federal Rule of Criminal Procedure 6, requiring him to, among other things, maintain the secrecy of materials relating to grand jury investigations. Mar. 29 Letter at 1.

4.      In light of the Attorney General's public pledge to release only a redacted version of the Special Counsel's Report that excises grand jury material, the Reporters Committee brings this Application for an order authorizing the release of grand jury material cited, quoted, or referenced in the Special Counsel's Report pursuant to Local Criminal Rule 57.6. Granting the relief requested in this Application will allow the Attorney General to release a more complete, unredacted version of the Special Counsel's Report, allowing for transparency and promoting governmental accountability, and ensuring public trust and confidence in the results of this important investigation. The Reporters Committee therefore requests that this Court, pursuant to Federal Rule of Criminal Procedure 6 and its inherent supervisory authority, issue an order

---

[1]  Exhibits cited herein are to the Declaration of Amir C. Tayrani dated Apr. 1, 2019, filed in support of this Application.

[2]  Most recently, the Reporters Committee moved to unseal opinions, briefs, transcripts, and record documents underlying a previously sealed contempt proceeding connected to the Special Counsel's investigation. *See In re Grand Jury Subpoena No. 7409*, No. 18-gj-41-BAH (D.D.C.). In the hearing on the Reporters Committee's motion to unseal in that matter, the Court stated that it "appreciate[d] the fact that the Reporters Committee has . . . come forward" to advocate for "[t]ransparency," which the Court recognized was "very important." Ex. 2 at 16:20-25.

authorizing the release of grand jury material cited, quoted, or referenced in the Special Counsel's Report by either the Department of Justice or Congress so that the public can access that report in full, and fairly assess the Special Counsel's and Attorney General's conclusions.

5.      "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) (opinion of Burger, C.J.). This Court should enable the release of the Special Counsel's Report to the public to the fullest extent possible. Although the Special Counsel's investigation has only recently concluded, the resulting report—and the grand jury material the Attorney General has proposed to redact therein—is of unique public interest and historical significance. This Court should grant this Application and issue an order that would allow the Attorney General to comply with the Reporters Committee's FOIA request and let the Attorney General make public those portions of the Special Counsel's Report that cite, quote, or reference grand jury materials.

## STATEMENT OF FACTS

6.      In May 2017, Deputy Attorney General Rod Rosenstein appointed Robert S. Mueller III to serve as Special Counsel for the Department of Justice to investigate the Russian government's efforts to interfere in the 2016 presidential election and related matters, and to prosecute any federal crimes uncovered during the investigation. *In re Grand Jury Investigation*, 916 F.3d 1047, 1051 (D.C. Cir. 2019). The investigation has received widespread attention from the public and the press ever since. *See, e.g.*, *In re Grand Jury Subpoena No. 7409*, No. 18-gj-41, Dkt. No. 57 at 1-3 (D.D.C. Jan. 15, 2019) (noting intense public interest in all facets of these proceedings). Nearly two years later, the Special Counsel's Office concluded its investigation by submitting a confidential report to the Attorney General. Mar. 24 Letter at 1.

7.    On March 24, 2019, the Attorney General issued to Congress and the public a four-page "summar[y of] the principal conclusions reached by the Special Counsel and the results of his investigation." *Id.* The letter summarized the Special Counsel's findings and conclusions on two issues: "Russian Interference in the 2016 U.S. Presidential Election," and "Obstruction of Justice." *Id.* at 2-3.   The Attorney General wrote that the Special Counsel's investigation "determined that there were two main Russian efforts to influence the 2016 election," but that: "'[T]he investigation did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities.'" *Id.* at 2 (quoting partial sentence from report).   The Attorney General further stated that the Special Counsel "did not draw a conclusion" as to whether "the examined conduct constituted obstruction [of justice]," and quotes another partial sentence from the report instead stating that "'while this report does not conclude that the President committed a crime, it also does not exonerate him.'" *Id.* at 3.

8.    Consistent with his testimony in the Senate before his confirmation, the Attorney General stated that his "goal and intent is to release as much of the Special Counsel's [R]eport as I can consistent with applicable law, regulations, and Departmental policies." *Id.* at 4. Importantly, however, he noted that "it is apparent that the report contains material that is or could be subject to Federal Rule of Criminal Procedure 6(e)." *Id.* The Attorney General revealed that the Special Counsel's Office would assist the Department of Justice in "identifying all 6(e) information contained in the report," and indicated that he believes such material must be redacted as a matter of law. *Id.*

9.    On March 27, 2019, the Reporters Committee submitted a FOIA request to the Department of Justice, seeking "access to and copies of the Special Counsel's [R]eport." Ex. 1 at 1. Although that FOIA request is still pending, the Attorney General's planned redactions make

clear that the Department of Justice will, in response to that FOIA request, withhold those portions of the Special Counsel's Report that consist of material it deems subject to Federal Rule of Criminal Procedure 6(e). *See* 5 U.S.C. § 552(b)(3) (FOIA exemption providing for nondisclosure if another federal law "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue").

10.     Two days after the Reporters Committee filed its FOIA request, the Attorney General announced publicly that he "anticipate[d]" the Department of Justice "will be in a position to release the report by mid-April, if not sooner." Mar. 29 Letter at 1. But the Attorney General reaffirmed that he would not be willing or able to release the full report. Rather, he stated that the government would be "identifying *and redacting* the following:  (1) material subject to Federal Rule of Criminal Procedure 6(e) that by law cannot be made public; (2) material the intelligence community identifies as potentially compromising sensitive sources and methods; (3) material that could affect other ongoing matters, including those that the Special Counsel has referred to other Department offices; and (4) information that would unduly infringe on the personal privacy and reputational interests of peripheral third parties." *Id.* (emphasis added).

11.     The Attorney General's intended redactions will stymie the efforts of not only the Reporters Committee in its FOIA request, but the intentions of members of Congress, too, who have asked that the report be released in full to the public. Chairmen Jerrold Nadler, Adam B. Schiff, and Elijah E. Cummings of the House Judiciary, Intelligence, and Oversight Committees, respectively, have "call[ed] for the release of the Special Counsel's full and complete report and all underlying documents" because the "Special Counsel's Report should be allowed to speak for itself."   Joint Statement (Mar. 24, 2019), https://bit.ly/2JVRnH0.   Representatives Nadler, Cummings, Schiff, Maxine Waters, Richard E. Neal, and Elliot L. Engel have further issued a

"formal[] request that [the Attorney General] release the Special Counsel's full report to Congress no later than Tuesday, April 2."   Letter to Attorney Gen. Barr (Mar. 25, 2019), https://bit.ly/2HTgHe0.  And earlier in March, the House of Representatives nearly unanimously passed a 420-0 resolution "[e]xpressing the sense of Congress that the report of Special Counsel Mueller should be made available to the public and to Congress."  H.R. Con. Res. 24, 116th Cong. (Mar. 7, 2019).  If Congress receives the full Special Counsel's Report, it would have the ability to share it with the public, the press, and the Reporters Committee, allowing the report "to speak" to the public "for itself."

12.    The Attorney General's decision that he has no choice but to redact grand jury material from any disseminated version of the Special Counsel's Report means that the Reporters Committee and other members of the press and public will not be able to obtain access to the full report, either through a FOIA request to the Department of Justice or through Congress sharing the report with the public.   That harms the Reporters Committee's interests in transparent government, in enforcing the public's right to access government records, and in advancing the newsgathering rights of journalists.  *See, e.g.*, *Zerilli v. Smith*, 656 F.2d 705, 710 (D.C. Cir. 1981) ("The First Amendment guarantees a free press primarily because of the important role it can play as a vital source of public information." (internal quotation marks omitted)).   The Reporters Committee brings this Application to allow the Attorney General and Congress to make the Special Counsel's Report public to the fullest extent possible.

## DISCUSSION

13.    Local Criminal Rule 57.6 provides that "[a]ny news organization or other interested person, other than a party or a subpoenaed witness, who seeks . . . relief relating to a criminal investigative or grand jury matter, shall file an application for such relief with the Court.  The application shall include a statement of the applicant's interest in the matter as to which relief is

sought, a statement of facts, and a specific prayer for relief."[3]  Pursuant to Local Rule 57.6, this Court should issue an order authorizing the grand jury material cited, quoted, or referenced in the Special Counsel's Report to be made public both pursuant to the Court's inherent authority to unseal grand jury materials and pursuant to the Federal Rules of Criminal Procedure.  To the extent necessary to aid the Court's ruling on this Application, the Reporters Committee further requests that the Court issue an order directing the Attorney General to lodge an unredacted copy of the Special Counsel's Report with the Court for *in camera* review, and to identify for the Court the redactions the Attorney General proposes to make pursuant to Rule 6(e).  *See* 28 U.S.C. § 1651.

14.     An order from this Court authorizing release of this grand jury material will allow the Attorney General and Congress to provide the Reporters Committee, and the press and public at large, a more fulsome version of the Special Counsel's Report.  This Court should grant the Application in full.

---

[3]  The Reporters Committee has standing to bring this Application based on Rule 57.6, which allows "[a]ny news organization or other interested person" to bring such an application. That rule reflects that "the press' function as a vital source of information is weakened whenever the ability of journalists to gather news is impaired." *Zerilli*, 656 F.2d at 711.  The Reporters Committee further has standing in light of its pending FOIA request, which the Attorney General has effectively stated will be denied to the extent it seeks material deemed subject to Rule 6(e), and to advance its "First Amendment interest in receiving information from willing speakers." *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995); *see also Stephens v. Cty. of Albemarle, Va.*, 524 F.3d 485, 492 (4th Cir. 2008) (a plaintiff has "standing to assert a right to receive speech" by "show[ing] that there exists a speaker willing to convey the information to her").  Because the Attorney General and FOIA make clear, *supra* ¶¶ 8-10; 5 U.S.C. § 552(b)(3), that absent judicial intervention the full Special Counsel's Report will not be released, this dispute is also ripe for adjudication.  *See Teva Pharm. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1309 (D.C. Cir. 2010) (pre-enforcement administrative challenge ripe where "it is clear what the FDA will do absent judicial intervention"); *cf. Susan B. Anthony List v. Drehaus*, 573 U.S. 149, 165 (2014) ("[A]dministrative action . . . may give rise to harm sufficient to justify pre-enforcement review.").  The issue is "fit for judicial review," it "does not depend on 'contingent future events,'" and the absence of judicial intervention will cause "hardship" to the Reporters Committee and the public, *see infra* ¶¶ 19-20.  *Flynt v. Rumsfeld*, 355 F.3d 697, 702-03 (D.C. Cir. 2004); *see Zerilli*, 656 F.2d at 711.

## I.  This Court Should Exercise Its Inherent Authority To Unseal Grand Jury Material Cited, Quoted, Or Referenced In The Special Counsel's Report.

15.     This Court "retains an inherent authority to unseal and disclose grand jury material not otherwise falling within the enumerated exceptions to Rule 6(e)." *In re Unseal Dockets Related to Indep. Counsel's 1998 Investigation of President Clinton*, 308 F. Supp. 3d 314, 323 (D.D.C. 2018) (Howell, C.J.) (collecting cases).     Courts have identified nine "non-exhaustive . . . factors" used to determine whether the court's inherent authority should be exercised in a given case. *Id.* at 326.  Those factors include:

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material— either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.

*In re Petition of Kutler*, 800 F. Supp. 2d 42, 47-48 (D.D.C. 2011) (quoting *In re Craig*, 131 F.3d 99, 106 (2d Cir. 1997)); *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016).  And courts have further recognized that, irrespective of the nine factors, "historical or public interest alone" can justify the release of information related to a grand jury investigation. *Craig*, 131 F.3d at 105.

16.     As an initial matter, "historical or public interest alone [] justif[ies] the release" of grand jury information cited, quoted, or referenced in the Special Counsel's Report. *Id.*  Courts have recognized that the public's interest in understanding grand jury investigations assessing criminal conduct *directed at* a president may "overwhelm" any need for secrecy. *Id.* (addressing hypothetical investigations into John Wilkes Booth and Aaron Burr).  The same is certainly true with regard to a grand jury investigation into alleged criminal conduct by a president or a

presidential campaign.  Public access to such material is of uniquely paramount importance.  And, indeed, courts in this Circuit have readily exercised their inherent authority to release grand jury material related to criminal investigations of recent presidents.  *See Kutler*, 800 F. Supp. 2d at 47-48 (ordering disclosure of President Nixon's grand jury testimony); *In re Unseal Dockets*, 308 F. Supp. 3d at 327-36 (ordering unsealing of eleven dockets relating to the Independent Counsel's investigation of President Clinton); *see also In re North*, 16 F.3d 1234, 1241 (D.C. Cir. 1994) (ordering release of Independent Counsel report on Iran-Contra matters based, in part, on the "national interest that the public, its representatives in the political branches, and its surrogates in the media have as full an access to the fruits of the investigation as possible"); *Haldeman v. Sirica*, 501 F.2d 714, 715-16 (D.C. Cir. 1974) (affirming district court's order transmitting sealed report and grand jury evidence to Congress).  Based on the unparalleled historic and public import of the grand jury material cited, quoted, or referenced in the Special Counsel's Report, this Court should do the same here.  The interests of history and the public "overwhelm" any need to maintain secrecy of such grand jury material.

17.     Application of the relevant factors identified in *Unseal Dockets* further demonstrates that this Court should authorize public release of grand jury material in the Special Counsel's Report.  Although the Reporters Committee cannot fairly address several of the factors because the Special Counsel's Report and its underlying material are not public, the key factors support disclosure here.

18.     ***The information sought****.*  The Special Counsel's Report is no ordinary government document that refers to grand jury material:  "There is no question" that the report and "the requested records are of great historical importance."  *Kutler*, 800 F. Supp. 2d at 48.  Like the grand jury investigations into Presidents Nixon and Clinton, the Special Counsel's grand jury

investigation into President Trump has "capture[d] both scholarly and public interest," counseling in favor of unsealing here. *Id.* Allowing the public to access the grand jury material cited, quoted, or referenced in the Special Counsel's Report will enable the Attorney General and Congress to release to the public a more fulsome version of that report, which will promote public trust in government. It will "enhance the existing historical record, foster further scholarly discussion, and improve the public's understanding of a significant historical event." *Id.* The nature of the information sought clearly counsels in favor of disclosure.

19. ***Purpose for seeking disclosure.*** If "otherwise secret information is being sought" because of "significant historical interest," that significant historic interest "militates in favor of release," and is a "weighty" consideration. *Craig*, 131 F.3d at 106. Disclosure of the Special Counsel's Report, including those portions that cite, quote, or reference grand jury materials, would "foster[] vigorous and sustained debate, not only about the case itself, but also about broader issues concerning fundamental and, at times, countervailing aspects of our democracy—freedom of expression, . . . governmental investigative power, . . . and the role and function of grand juries themselves." *In re Am. Historical Ass'n*, 49 F. Supp. 2d 274, 295 (S.D.N.Y. 1999). The American public has an acute interest in seeing the report unveiled and, indeed, is clamoring for such a release. Domenico Montanaro, *Poll: After Barr Letter, Overwhelming Majority Wants Full Mueller Report Released*, NPR (Mar. 29, 2019), https://n.pr/2FIE34u.

20. The purposes of the requested disclosure also counsel in favor of the relief sought by the Reporters Committee. As the country looks ahead to the next presidential election in 2020, public access to the Special Counsel's findings is essential. The report details an investigation into Russian interference with the 2016 presidential election and thus has immensely important ramifications for our foreign policy, national security, and electoral system. The public, the press,

and scholars should not have to wait decades for the public and historical record to be full and accurate. Although courts have recognized that the government's interest in grand jury secrecy diminishes over time, no court has determined that grand jury materials may only be released years after the investigation has concluded. And for good reason: Robust public debate, news reporting, and historical analysis occur in real-time. *See Carlson v. United States*, 109 F. Supp. 3d 1025, 1035 (N.D. Ill. 2015), *aff'd* 837 F.3d 753 (7th Cir. 2016) (noting that grand jury investigation "received media coverage at the time it occurred"). Disclosure now "ensur[es] the pages of history are based upon the fullest possible record." *In re Am. Historical Ass'n*, 49 F. Supp. 2d at 295. Our nation's impending "vigorous and sustained debate," *id.*, should be fully informed based on the full report from Special Counsel Mueller. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010) ("Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people. . . . The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it."); *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) ("[T]he First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office."); *Buckley v. Valeo*, 424 U.S. 1, 14–15 (1976) ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation."); *id.* at 14 ("Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution.").

21.     ***Information has already been made public***.  "[E]ven partial previous disclosure often undercuts many of the reasons for secrecy." *Craig*, 131 F.3d at 107; *see In re Unseal*

*Dockets*, 308 F. Supp. 3d at 322-23 ("[G]rand jury secrecy is not unyielding when there is no secrecy left to protect." (internal quotation marks and citation omitted)); *see also In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154-55 (D.C. Cir. 2007) (ordering the "release [of] those redacted portions of [the] concurring opinion and the two ex parte affidavits that discuss grand jury matters" where "the 'cat is out of the bag'" given that one grand jury witness "discusse[d] his role on the CBS Evening News"); *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 505 (D.C. Cir. 1998) (noting that when grand jury witness's attorney "virtually proclaimed from the rooftops that his client had been subpoenaed," that fact was no longer protected by grand jury secrecy); *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) (noting that "information widely known is not secret" and "when information is sufficiently widely known" it "los[es] its character as Rule 6(e) material"); Local Crim. R. 6.1 (authorizing disclosure of grand jury material where secrecy is no longer "necessary").

22.     Much of the information that relates to this grand jury investigation has already been made public. The public knows the focus and scope of the investigation; it knows who many of the witnesses are; it also knows the subjects and targets of the investigation. *See* Margaret Hartmann & Nick Tabor, *Everything We've Learned From Robert Mueller's Investigation (So Far)*, N.Y. Mag. (Mar. 22, 2019), https://nym.ag/2V67mU7 (detailing the trove of information available from public indictments and news reports). But more importantly, the public knows the outcome—including the Attorney General's conclusion that the Special Counsel's investigation "determined that there were two main Russian efforts to influence the 2016 election" but that the Special Counsel "did not find that the Trump campaign, or anyone associated with it, conspired or coordinated with the Russian government in these efforts." Mar. 24 Letter at 2.

23.     Additionally, broad swaths of information from the grand jury investigation have come into the public domain as a result of the "number of indictments and convictions of individuals" that the Special Counsel obtained during his investigation, "all of which have been publicly disclosed." Mar. 24 Letter at 2.   Specifically, the Special Counsel obtained some 34 indictments of foreign nationals as well as high-level officials of the federal government and the President's previous campaign apparatus, including Paul Manafort, Rick Gates, Retired Lieutenant General Michael Flynn, George Papadopoulous, Michael Cohen, and Roger Stone, among others. *See* Amy Sherman, *All of the People Facing Charges From Mueller's Investigation Into Russian Meddling*, Politifact (Mar. 25, 2019), https://bit.ly/2Wx5nIR.   Several of these defendants have been publicly tried or pleaded guilty—and allocuted—in public.   *See* Karen Yourish, Larry Buchanan, and Alicia Parlapiano, *Everyone Who's Been Charged in Investigations Related to the 2016 Election*, N.Y. Times (Mar. 13, 2019), https://nyti.ms/2nZjxTy.   Others have been publicly sentenced to significant jail time, *id.*, or even testified publicly before Congress about information relevant to the grand jury investigation, *see Full Transcript: Michael Cohen's Opening Statement to Congress*, N.Y. Times (Feb. 27, 2019), https://nyti.ms/2U6gDLg (testifying regarding contacts with Russia).   That the subject of a grand jury investigation has "generally" been "disclosed to the public" through, for example, "indictments" of multiple persons "and media accounts" "weighs most strongly in favor of release." *In re North*, 16 F.3d at 1240 (applying statutory factors to release Independent Counsel report and reasoning that "[t]he American public is particularly entitled to this accountability where the subject of the investigation and the investigation itself have been widely publicized of long duration and great expense").   These prior public disclosures about the Special Counsel's investigation clearly countenance in favor of disclosure of grand jury material cited, quoted, or referenced in the Special Counsel's Report.

24.    ***Identity of the party seeking disclosure***.  The Reporters Committee is a nonprofit association founded almost five decades ago by leading journalists and lawyers to protect press freedom and promote government transparency.  The Reporters Committee seeks to ensure the ability of the news media to serve as the "vital source of information" that the First Amendment meant it to be—a source that can "'bare the secrets of government and inform the people.'"  *Zerilli*, 656 F.2d at 711 (quoting *N.Y. Times Co. v. United States*, 403 U.S. 713, 717 (1971)).  As this Court has noted, the Reporters Committee's efforts to promote "[t]ransparency" is a "very important" aim.  *See* Ex. 2 at 16:20-25.  The Reporters Committee's identity, a factor that "carr[ies] great weight," *Craig*, 131 F.3d at 106, plainly counsels in favor of disclosure.  *See Kutler*, 800 F. Supp. 2d at 48 (major historical groups and scholars sought access, and their identity "weighs in petitioners' favor").

25.    ***Whether the government opposes disclosure***.  The federal government's public positions support disclosure here.  The head of the Executive Branch—the President himself—has indicated that he has no objection to public release of the Special Counsel's Report.  Cheyenne Haslett, *Trump Says Release of Mueller Report "Wouldn't Bother" Him At All*, ABC News (Mar. 25, 2019), https://abcn.ws/2WoUloW.  In fact, the President has gone further, expressing affirmative support for disclosure, stating "let [the Special Counsel's Report] come out, let people see it."  *Id.*  Numerous members of Congress, too, including a nearly unanimous House of Representatives, have concluded that the Special Counsel's Report should be released.  H.R. Con. Res. 24, 116th Cong. (Mar. 7, 2019) (420-0 resolution "[e]xpressing the sense of Congress that the report of Special Counsel Mueller should be made available to the public and to Congress").

26.    Although it is possible that the Attorney General may oppose this Application, given his statement that the Department of Justice would redact material subject to Rule 6(e) "that

by law cannot be made public," Mar. 29 Letter at 1, the President's position renders entirely

unpersuasive any such possible opposition.  The Attorney General's position, too, could be based

on his views of the secrecy obligations imposed by Rule 6(e) on him and the Special Counsel, and

this Court could issue an order freeing them from those obligations.  In any event, the Department

of Justice's "position is not dispositive.  Government support cannot 'confer' disclosure, nor can

government opposition preclude it." *Kutler*, 800 F. Supp. 2d at 48 (quoting *Craig*, 131 F.3d at

106).  *If* the Department of Justice opposes disclosure, it must identify a "specific reason" showing

that such disclosure will "cause harm." *Carlson*, 109 F. Supp. 3d at 1034.  And not just any harm

will do—in keeping with background principles of public access to government documents

grounded in the First Amendment and the common law, the harm should be compelling, such as a

"threat[ to] national security[.]" *Id.*; *see also Am. Historical Ass'n*, 49 F. Supp. 2d at 291 (ordering

disclosure of grand jury materials related to the investigation of Alger Hiss).[4]

* * *

27.     At bottom, an order authorizing the public disclosure of grand jury materials cited,

quoted, or referenced in the Special Counsel's Report is warranted in this unique and important

case of national significance.  The public's need for access to the Special Counsel's Report, to the

---

[4] Even if there are continued secrecy interests as to particular witnesses—which the Reporters
Committee lacks information to directly address—the Special Counsel's Report carries
"undisputed historical interest" that "far outweigh[s] the need to maintain the secrecy of the
records." *Kutler*, 800 F. Supp. 2d at 50; *see also In re Petition of Gary May*, No. M 11–189,
Mem. & Order at 3–4 (S.D.N.Y. Jan. 20, 1987) (finding that "undisputed historical
significance" justified the disclosure of grand jury minutes relating to William Remington, a
prominent public official accused of being a Communist during the McCarthy era).  And, in
any event, the President's position favoring public release of the report should carry great
weight in light of the fact that the President himself was a subject of the investigation.
Likewise, to the extent the government identifies any specific information the disclosure of
which will actually cause cognizable harm, the Court is well-positioned to address such
specific pieces of information as appropriate.

greatest extent possible, unquestionably outweighs the ordinary interests that grand jury secrecy is designed to uphold. Although grand jury secrecy generally seeks to protect "the innocent accused from disclosure of the accusations made against him before the grand jury," *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.8 (1979), the grand jury material included in the Special Counsel's Report is broader than any one individual (nor can it be ignored that the main individual at issue in the investigation *supports* disclosure here). Rather, the grand jury material at issue cuts to the core of our democracy. *See Craig*, 131 F.3d at 105 (noting that "historical or public interest alone" can "justify the release of grand jury information").

28.     Likewise, the normal deterrence rationales favoring grand jury secrecy— "prevent[ing] the escape of those whose indictment may be contemplated," "insur[ing] the utmost freedom to the grand jury in its deliberations," "prevent[ing] subornation of perjury or tampering," and "encourage[ing] free and untrammeled disclosures" by witnesses—will not meaningfully be harmed by unsealing in these special circumstances. *Douglas Oil*, 441 U.S. at 219 n.10. A witness in an ordinary grand jury investigation is unlikely to be deterred from complying with that investigation merely because the Special Counsel's Report made public grand jury material connected to a widely publicized investigation into the President of the United States and Russian interference in our electoral process. *See Kutler*, 800 F. Supp. 2d at 47-48 (ordering disclosure of President Nixon's grand jury testimony); *In re Unseal Dockets*, 308 F. Supp. 3d at 327-36 (ordering unsealing of eleven dockets relating to the Independent Counsel's investigation of President Clinton). Indeed, President Clinton's own videotaped grand jury testimony was released in full to the public for its consideration, *see Starr's Evidence*, Wash. Post., https://wapo.st/2uA5OpH, with no detrimental effect on the institution of the grand jury.

29.     The material at issue is of singular historical and public value.  The public should be able to access it.

## II.     This Court Should Direct That The Exceptions To Grand Jury Secrecy In Federal Rule Of Criminal Procedure 6 Apply, Allowing Release Of Grand Jury Material Contained In The Special Counsel's Report.

30.     "Grand jury material may also be disclosed under various exceptions listed in Rule 6(e)," *In re Unseal Dockets*, 308 F. Supp. 3d at 323, several of which apply here.  Accordingly, this Court should also issue an order authorizing the public release of grand jury material cited, quoted, or referenced in the Special Counsel's Report pursuant to Rule 6(e).

31.     ***Judicial Proceedings Exception.***  "The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding."  Fed. R. Crim. P. 6(e)(3)(E)(i).  A party seeking grand jury materials pursuant to this exception must show that she (1) has a particularized need to use those materials (2) preliminarily to or in connection with (3) a judicial proceeding.  *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 442-43 (1983); *United States v. Baggot,* 463 U.S. 476, 480-81 (1983).  In order to show a particularized need, parties "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."  *Douglas Oil Co.*, 441 U.S. at 222.  "This standard is 'a highly flexible one  . . . and sensitive to the fact that the requirements of secrecy are greater in some situations than in others.'"  *Judicial Watch, Inc. v. Tillerson*, 270 F. Supp. 3d 1, 5 (D.D.C. 2017).  The judicial proceedings exception is not limited to situations in which a party seeks access to grand jury material for use in a criminal trial.  In fact, the D.C. Circuit has applied the judicial proceedings exception to its own determinations of whether to release grand jury material contained in an Independent Counsel's report.  *In re North*, 16 F.3d at 1244

(applying the exception where the court, by statute, made "the decision to release the [Independent Counsel's] Report").[5] Under a full and fair reading of the Rule, the exception should apply here.

32.     The various committees of the House of Representatives investigating the actions arising from the same conduct that spurred the appointment of the Special Counsel, at the very least, are "preliminary to" the type of proceedings for which Rule 6(e)'s exception applies. *See In re Request for Access to Grand Jury Materials Grand Jury No. 81-1 Miami*, 833 F.2d 1438, 1440-41 (11th Cir. 1987) ("Judge Butzner below held, and the parties agree, that within the meaning of the rule a Senate impeachment trial qualifies as a 'judicial proceeding' and that a House impeachment inquiry is 'preliminary to' the Senate trial."); *In re Grand Jury Proceedings of Grand Jury No. 81-1 (Miami)*, 669 F. Supp. 1072, 1076 (S.D. Fla. 1987) ("It is apparent from the text of the Constitution that the framers considered impeachment to be judicial in nature."); *but see In re Unseal Dockets*, 308 F. Supp. 3d at 318 n.4 ("Consideration by the House of Representatives, even in connection with a constitutionally sanctioned impeachment proceeding, falls outside the common understanding of 'a judicial proceeding.'") (citing *In re Pet. to Inspect & Copy Grand Jury Materials*, 735 F.3d 1261, 1271 (11th Cir. 1984)). The relevant grand jury material need not relate to a judicial proceeding that is actually ongoing but rather needs merely to pertain "to some identifiable" proceeding that is "pending *or anticipated*." *Baggot*, 463 U.S. at 480 (emphasis added). The House investigations qualify. And the grand jury material at issue here is plainly and particularly necessary because it pertains to the very inquiries Congress will conduct: specifically, the nature of the President's conduct and any evidence as to its criminality or lack thereof. Grand

---

[5]   According to the D.C. Circuit its "decision . . . as to which portions [of the Independent Counsel's report in the Iran Contra proceedings] are appropriate for release . . . are acts of the Court," and these "acts constitute a judicial proceeding." *In re North.* 16 F.3d at 1244; *see also In re Sealed Motion*, 880 F.2d 1367, 1379 (D.C. Cir. 1989) ("The term judicial proceeding has been given a broad interpretation by the courts.").

jury testimony included in the Special Counsel's Report, for example, may be essential when evaluating the credibility of witnesses testifying before Congress and it may be necessary to refresh the recollection of witnesses testifying before Congress. The grand jury material cited, quoted, or referenced in the Special Counsel's Report should not only be accessible to Congress, but also to the public.

33. ***National Security Exception.*** "An attorney for the government may disclose any grand-jury matter involving foreign intelligence, counterintelligence, or foreign intelligence information to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official to assist the official receiving the information in the performance of that official's duties." Fed. R. Crim. P. 6(e)(3)(D) (internal citations omitted). Further,

> An attorney for the government may also disclose any grand-jury matter involving, within the United States or elsewhere, a threat of attack or other grave hostile acts of a foreign power or its agent, a threat of domestic or international sabotage or terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent, to any appropriate federal, state, state subdivision, Indian tribal, or foreign government official, for the purpose of preventing or responding to such threat or activities.

*Id.* Because the grand jury investigation at issue involved questions of whether a foreign government attempted to interfere with and disrupt our national elections—quintessential "grave hostile acts of a foreign power or its agent" (*id.*)—this exception to grand jury secrecy applies.

34. Each element of Rule 6(e)(3)(D)'s exception applies under the Rule's plain text. First, the grand jury investigation plainly includes matters involving both "grave hostile acts of a foreign power or its agent" and "foreign intelligence, counterintelligence, or foreign intelligence information." Indeed, the primary purpose of the Special Counsel's investigation was to investigate Russia's efforts to interfere in the 2016 presidential election. *See In re Grand Jury*

*Investigation*, 916 F.3d at 1051.  Second, the members of the House Judiciary and Intelligence Committees and their staffs qualify as "any federal law enforcement, *intelligence*, protective, immigration, *national defense*, or *national security* official" (emphasis added)—the types of individuals who are permitted to receive the grand jury material included in the Special Counsel's Report.  And third, these officials need the grand jury material "to assist" them "in the performance of" their "duties."  The chairmen of those committees in particular have made it clear that the Special Counsel's Report is needed in full—not in redacted form—in order to assess threats to this country at home and from afar. *See supra* ¶ 11; *see also* H.R. Con. Res. 24, 116th Cong. (Mar. 7, 2019).  It is further within their official duties to disclose this grand jury material to the public to the extent it allows them to inform the public of potential foreign and domestic threats and prepare for future attacks on our nation. *See* Fed. R. Crim. P. 6(e)(3)(D) (authorizing disclosure "for the purpose of preventing or responding to such threat or activities").  The national security exception enumerated in Rule 6(e) therefore applies here.

35.  ***Government Attorney.***  "Disclosure of grand-jury material . . . may be made to an attorney for the government for use in performing that attorney's duty," Fed. R. Crim. P. 6(e)(3)(A)(i), and "any government personnel . . . an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law," Fed. R. Crim. P. 6(e)(3)(A)(ii). *See also* Fed. R. Crim. P. 6(e)(3)(B) ("A person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law.").  The government attorney exception applies to the cadre of attorneys that serve and represent the House of Representatives and, unquestionably, the members of the House they serve constitute "government personnel" that those attorneys can "consider[] necessary to assist in performing that attorney's

21

duty to enforce federal criminal law." To the extent any member of Congress and their counsel seek to investigate violations of federal criminal law, including any cognizable high crimes or misdemeanors, and to inform the public regarding evidence of criminal conduct by high-ranking administrative officials, the government attorney exception also applies.

* * *

36.     The Reporters Committee has a "First Amendment interest in receiving information from willing speakers." *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995); *see also Stephens v. Cty. of Albemarle*, 524 F.3d 485, 492 (4th Cir. 2008) (a plaintiff has "standing to assert a right to receive speech" by "show[ing] that there exists a speaker willing to convey the information to her"); *United States v. Wecht*, 484 F.3d 194, 202-03 (3d Cir. 2007) (acknowledging that news organizations may challenge gag orders directed at others "'as long as they can demonstrate that the order is an obstacle to their attempt to obtain access'"); *accord Zerilli*, 656 F.2d at 711 ("Without an unfettered press, citizens would be far less able to make informed political, social, and economic choices. But the press' function as a vital source of information is weakened whenever the ability of journalists to gather news is impaired.").

37.     Here, the relevant willing speaker is the House of Representatives. The House's near-unanimously passed resolution "[e]xpressing the sense of Congress that the report of Special Counsel Mueller should be made available to the public and to Congress," H.R. Con. Res. 24, 116th Cong. (Mar. 7, 2019); *see* Miles Parks, *House Votes Almost Unanimously For Public Release of Mueller Report*, NPR, https://n.pr/2HYrxiV, makes clear that if the House obtains the grand jury material cited, quoted, or referenced in the Special Counsel's Report, as it should, it would willingly share that information with members of the public, including the Reporters Committee. The Court should allow the House to do so, and the public should be allowed to

22

evaluate the Special Counsel's conclusions for itself.  Because members of Congress have requested and are entitled to the relevant grand jury material under these exceptions and would willingly share that material with the public, including the Reporters Committee, this Court should grant the Application and authorize the public release of grand jury material cited, quoted, or referenced in the Special Counsel's Report.

**III.    To The Extent Necessary To Rule On This Application, The Court Should Direct The Attorney General To Lodge An Unredacted Version Of The Special Counsel's Report With The Court.**

38.    To the extent needed to facilitate this Court's ruling on the Reporters Committee's Application, the Court should order the Attorney General to lodge with the Court an unredacted version of the Special Counsel's Report for *in camera* review and to identify those portions of the Special Counsel's Report it contends must be withheld from the public under Rule 6(e).  Pursuant to the All Writs Act, this Court has the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  "The authority to issue orders under the Act may be exercised in the court's 'sound judgment' when necessary 'to achieve the rational ends of law' and 'the ends of justice entrusted to it.'"  *In United States for an Order Pursuant to 28 U.S.C. § 1651(A) For Order Precluding Notice of Grand Jury Subpoena*, 2017 WL 3278929, at *1 (D.D.C. July 7, 2017) (Howell, C.J.).  The Court's "power reaches even 'persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice' and 'who have not taken any affirmative action to hinder justice.'"  *United States v. Hughes*, 813 F.3d 1007, 1010 (D.C. Cir. 2016) (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977)).

39.    An order requiring the Department of Justice to give the Court access to the Special Counsel's Report is both "necessary" and "appropriate" to aid this Court's "jurisdiction[]" and the

exercise of its inherent and supervisory authority over the grand jury and grand jury materials. *See In re Unseal Dockets*, 308 F. Supp. 3d at 324 (recognizing that the district court has "supervisory authority over grand juries" and that "[g]rand juries have long been recognized as 'a part of the judicial process' and 'an appendage of the court'" (citations omitted)); *accord Carlson*, 837 F.3d at 760 (noting that "grand-jury transcripts are, in their very nature, judicial documents (just as a transcript of a trial would be)"). And where a third party alone possesses information the Court needs to exercise its authority, the Court may issue an order pursuant to the All Writs Act to obtain that information. *Evans v. Williams*, 1999 WL 1212884, at *4 (D.D.C. Aug. 20, 1999) (issuing writ of mandamus to Superior Court, Family Division, where "without" access to "the information that the Superior Court possesses, the Court cannot devise a concrete plan for concluding this case"); *accord In re Grand Jury Proceedings*, 654 F.2d 268, 276 (3d Cir. 1981) (affirming district court's order issued pursuant to All Writs Act to force state court judge to meet with U.S. attorney to determine whether federal grand jury materials should be disclosed to state criminal defendant).

## PRAYER FOR RELIEF

40.     For the forgoing reasons, Applicant requests the following relief:

      a.  An order authorizing the public release of grand jury material cited, quoted, or referenced in the Special Counsel's Report pursuant to this Court's inherent authority;

      b.  An order authorizing the public release of grand jury material cited, quoted, or referenced in the Special Counsel's report pursuant to exception(s) set forth in Federal Rule of Criminal Procedure 6(e);

      c.  Any further relief that the Court deems just and proper.

## ORAL ARGUMENT REQUESTED

41.     Applicant respectfully requests oral argument on this application.

April 1, 2019

Respectfully submitted,

THEODORE J. BOUTROUS [DC Bar No. 420440]
*Counsel of Record*
THEANE EVANGELIS (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
(213) 229.7000
tboutrous@gibsondunn.com

AMIR C. TAYRANI
DC Bar No. 490994
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955.8500
atayrani@gibsondunn.com

LEE R. CRAIN (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York City, New York
(212) 351.2454
lcrain@gibsondunn.com

BRUCE D. BROWN
D.C. Bar No. 457317
KATIE TOWNSEND
D.C. Bar No. 1026115
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
bbrown@rcfp.org
ktownsend@rcfp.org

*Counsel for Applicant Reporters Committee for Freedom of the Press*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

*In re:*

*Application of the Reporters Committee for Freedom of the Press for an Order Authorizing the Release of Grand Jury Material Cited, Quoted, or Referenced In the Report of Special Counsel Robert S. Mueller III,*

1156 15th Street NW, Suite 1020
Washington, D.C. 20005

Miscellaneous Action No. _____

## <u>DECLARATION OF AMIR C. TAYRANI IN SUPPORT OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS'S APPLICATION</u>

I, AMIR C. TAYRANI, hereby declare under penalty of perjury the following:

1.        My name is Amir C. Tayrani of Gibson, Dunn & Crutcher LLP.  I represent Reporters Committee for Freedom of the Press in the above-captioned matter.  By virtue of my direct involvement in this matter, I have personal knowledge of the content of this declaration, and I could and would competently testify to the truth of the matters stated herein.

2.        Attached as **Exhibit 1** is a true and correct copy of a Freedom of Information Act Request submitted by letter on behalf of the Reporters Committee for Freedom of the Press to the Office of the Attorney General on March 27, 2019.

3.        Attached as **Exhibit 2** is a true and accurate copy of a transcript of a hearing before the Honorable Beryl A. Howell, United States District Court Chief Judge, on the Reporters Committee for Freedom of the Press's motion to unseal in *In re: Grand Jury Subpoena* 7049, No. GJ 18-41, held on March 27, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 1, 2019

Respectfully submitted,

Amir C. Tayrani (D.C. Bar No. 490994)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel:  (202) 887-3692
atayrani@gibsondunn.com

*Counsel for Applicant*
*Reporters Committee for Freedom of the Press*

Exhibit 1

**REPORTERS COMMITTEE**

**FOR FREEDOM OF THE PRESS**

1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
www.rcfp.org

Bruce D. Brown
Executive Director
bbrown@rcfp.org
(202) 795-9301

STEERING COMMITTEE

STEPHEN J. ADLER
*Reuters*

SCOTT APPLEWHITE
*The Associated Press*

WOLF BLITZER
*CNN*

DAVID BOARDMAN
*Temple University*

CHIP BOK
*Creators Syndicate*

MASSIMO CALABRESI
*Time Magazine*

MANNY GARCIA
*USA TODAY NETWORK*

EMILIO GARCIA-RUIZ
*The Washington Post*

JOSH GERSTEIN
*POLITICO*

ALEX GIBNEY
*Jigsaw Productions*

SUSAN GOLDBERG
*National Geographic*

JAMES GRIMALDI
*The Wall Street Journal*

LAURA HANDMAN
*Davis Wright Tremaine*

JOHN C. HENRY
*Freelance*

KAREN KAISER
*The Associated Press*

DAVID LAUTER
*Los Angeles Times*

DAHLIA LITHWICK
*Slate*

MARGARET LOW
*The Atlantic*

TONY MAURO
*National Law Journal*

JANE MAYER
*The New Yorker*

ANDREA MITCHELL
*NBC News*

MAGGIE MULVIHILL
*Boston University*

JAMES NEFF
*Philadelphia Media Network*

CAROL ROSENBERG
*The Miami Herald*

THOMAS C. RUBIN
*Quinn Emanuel*

CHARLIE SAVAGE
*The New York Times*

BEN SMITH
*BuzzFeed*

JENNIFER SONDAG
*Bloomberg News*

PIERRE THOMAS
*ABC News*

SAUNDRA TORRY
*USA TODAY*

VICKIE WALTON-JAMES
*NPR*

JUDY WOODRUFF
*PBS/The NewsHour*

*Senior Advisor:*
PAUL STEIGER
*ProPublica*

*Affiliations appear only
for purposes of identification.*

Adam A. Marshall
Reporters Committee for Freedom of the Press
1156 15th St. NW, Suite 1020
Washington, DC 20005
amarshall@rcfp.org

Office of the Attorney General
Department of Justice
Washington, D.C.

March 27, 2019

VIA FOIAOnline

**RE: Freedom of Information Act Request**

To Whom It May Concern:

This letter constitutes a request under the federal Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and is submitted on behalf of the Reporters Committee for Freedom of the Press ("Reporters Committee" or "RCFP") to the Office of the Attorney General ("OAG") at the United States Department of Justice ("DOJ" or the "Department"). The Reporters Committee is a nonprofit association dedicated to protecting First Amendment freedoms and the newsgathering rights of journalists.[1]

## I.   **Background**

For your information, and in order to facilitate the location of responsive records, this request relates to report submitted by Special Counsel Robert S. Muller III (the "Special Counsel") to the Attorney General on or about March 22, 2019. *See, e.g.*, Letter from Attorney General William P. Barr to Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins (Mar. 24, 2019).[2]

## II.   **Requested Record**

Pursuant to the FOIA, I, on behalf of the Reporters Committee, request access to and copies of the Special Counsel's report transmitted to the Attorney General on or about March 22, 2019, titled "Report on the Investigation into Russian Interference in the 2016 Presidential Election."

---

[1] *See generally* www.rcfp.org.

[2] *Archived at* https://perma.cc/VG4A-M27U.

Please provide all responsive records in electronic format.

## II.   Fees and Fee Categorization

As a representative of the news media, the Reporters Committee is only required to pay for the direct cost of duplication after the first 100 pages.  5 U.S.C. § 552(a)(4)(A)(ii)(II).  This information is being sought on behalf of the Reporters Committee for, *inter alia*, analysis and free dissemination to the general public through multiple avenues, including RCFP's website,[3] social media accounts,[4] and email newsletters.[5]  These records are not being sought for commercial purposes.

In the event that there are fees for responding to this request, the Reporters Committee is willing to pay up to $50.  Please let me know in advance if fees for responding to this request will exceed that amount before proceeding.

## III.   Conclusion

If this request is denied in whole or part, please justify all such denials by reference to specific exemptions and explain why OAG "reasonably foresees that disclosure would harm an interest" protected by that exemption or why "disclosure is prohibited by law[.]"  5 U.S.C. § 552(a)(8).  Please also ensure that all segregable portions of otherwise exempt material are released.

If you have any questions regarding this request, please feel free to contact me at amarshall@rcfp.org.  Thank you in advance for your assistance.

Sincerely,

Adam A. Marshall
Knight Foundation Litigation Attorney
Reporters Committee for Freedom of the Press

---

[3] https://www.rcfp.org/.
[4] *See, e.g.*, https://twitter.com/rcfp (~15.3 thousand followers as of March 28, 2019);
https://www.facebook.com/ReportersCommittee/ (7,965 "likes" as of March 28, 2019).
[5] https://rcfp.us15.list-manage.com/subscribe?u=682100887bbcfff066b451132&id=8f701b284f.

Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
IN RE:                              )   GJ 18-41
Grand Jury Subpoena 7049            )
                                    )
Interested Parties,                 )   March 27, 2019
CORPORATION,                        )   11:28 a.m.
GOVERNMENT,                         )   Washington, D.C.
MOVANT,                             )
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

<u>**APPEARANCES**</u>:

**FOR THE CORPORATION:**      BRIAN BOONE
                              KARL GEERCKEN
                              EDWARD T. KANG
                              LEE DENEEN
                              Alston & Bird
                              90 Park Avenue
                              New York, NY 10016

**FOR THE GOVERNMENT:**       DAVID B. GOODHAND
                              ZIA M. FARUQUI
                              PETER C. LALLAS
                              U.S. Department of Justice
                              Washington, D.C. 20530

**FOR THE MOVANT:**           THEODORE J. BOUTROUS, JR.
                              LEE R. CRAIN
                              KATIE TOWNSEND
                              Gibson, Dunn & Crutcher LLP
                              333 South Grand Avenue
                              Los Angeles, CA 90071-3197

Court Reporter:               Elizabeth Saint-Loth, RPR, FCRR
                              Official Court Reporter
                              Washington, D.C.  20001

Proceedings reported by machine shorthand, transcript
produced by computer-aided transcription.

```
 1              P R O C E E D I N G S

 2              THE DEPUTY:  Matter before the Court, grand jury

 3     matter 18-41 in regards to grand jury subpoena No. 7049,

 4     Counsel for the interested party, corporation; Government;

 5     movant, Reporters Committee For Freedom of the Press.

 6              Please come forward and identify yourselves for

 7     the record.

 8              MR. BOUTROUS:  Good morning, Your Honor.

 9     Theodore Boutrous for the Reporters Committee For Freedom of

10     the Press.  I am joined by my colleagues Lee Crain and Katie

11     Townsend from the Reporters Committee.

12              We are pleased to be here.  Thank you, Your Honor.

13              THE COURT:  Yes.  Good morning.

14              The Government -- well, Mr. Boone.

15              MR. BOONE:  Brian Boone from Alston & Bird for the

16     corporation.  With me today are Karl Geercken, Ted Kang, and

17     Lee Deneen, also from Alston & Bird.

18              THE COURT:  Yes.  Thank you.

19              MR. GOODHAND:  Good morning, Your Honor.

20     David Goodhand for the United States.  With me at counsel's

21     table is Zia Faruqui and Peter Lallas.

22              THE COURT:  All right.  Well, welcome, everybody.

23              Let me just begin by reviewing where we are in the

24     case because the Reporters Committee has before me a motion

25     to unseal redacted versions, by my count, of the briefs, the
```

1    record, transcripts and orders in this action, as well as

2    the identity of the corporation, that is, the contemnor.

3         And let me just start by making clear or

4    summarizing what's already been made public in this case at

5    multiple levels of the federal judiciary.

6         In the District Court, I have already released a

7    redacted copy of the docket sheet as of January 31, 2019;

8    redacted copies of six memoranda, including the contempt

9    order in this case, which is docketed at ECF 30.   The D.C.

10   Circuit has made the docket public, as well as redacted

11   forms of its opinion, the parties' briefs regarding

12   unsealing.

13        And my understanding is that the parties before

14   the D.C. Circuit are in the midst right now of an ongoing

15   effort to redact the parties' substantive briefs so that

16   redacted versions of those briefs can be made public.

17        The Supreme Court has made the docket itself

18   public, as well as redacted versions of the parties' briefs

19   regarding the stay of the contempt order in this case;

20   redacted versions of the parties' briefs regarding the

21   petition for certiori; and unredacted versions of the

22   parties' briefing regarding the Reporters Committee's motion

23   to unseal before the Supreme Court.   Neither the D.C.

24   Circuit nor the Supreme Court has revealed the identity of

25   the contemnor.

1                    So part -- from where I sit, part of the Reporters

2          Committee motion seeking redacted versions of the briefing

3          is, in some ways, just to have this Court catch up with the

4          redacted versions of briefing that is already available on

5          the Supreme Court docket, and I think is going to be made

6          available on the D.C. Circuit's docket.

7                    Mr. Goodhand, is that a fairly accurate summary?

8                    MR. GOODHAND:  Yes, that's my understanding, Your

9          Honor.

10                   THE COURT:  Okay.  Do you know when, before the

11         D.C. Circuit, all of those redacted versions of briefs will

12         be made available?

13                   MR. GOODHAND:  Your Honor, actually -- I'm sorry.

14                   I communicated this morning with the assistant to

15         handle this matter in the D.C. Circuit.  And I actually

16         asked if the redactions had been completed of both briefs,

17         and the transcripts of the oral argument.  He emailed those

18         to me.  And I actually didn't follow up -- I didn't have

19         time, actually, to follow up and see whether they had been

20         filed.  That suggests to me, however, if they haven't

21         already been filed, it is very soon.

22                   THE COURT:  All right.  Well, I think, from my

23         review of the docket there, the corporation doesn't have to

24         respond until March 27th.  So I don't think that any of them

25         have been actually filed yet.  You are just still in the

1    process of going back with redactions.

2                 Is that correct, Mr. Boone?

3                 MR. BOONE:  That's correct, Your Honor.

4                 THE COURT:  All right.  Okay.

5                 So I am going to -- just so everybody understands

6    the structure of how I'm going to conduct the hearing this

7    morning, I am going to start with some clarifying questions

8    to Mr. Boone on behalf of the corporation, and then I will

9    turn to the Reporters Committee.

10                So just to begin, Mr. Boone, on behalf of the

11   corporation, the corporation is aware that it had the right

12   to request that the contempt proceedings in this matter be

13   open to the public; is that correct?

14                MR. BOONE:  That is correct, Your Honor.

15                THE COURT:  And just to confirm, no such request

16   was ever made; is that correct?

17                MR. BOONE:  That's right.

18                THE COURT:  The Reporters Committee highlights the

19   fact that the corporation has taken no position on its

20   unsealing request, suggesting that the corporation has no

21   interest in preserving secrecy here.  Is it correct that the

22   corporation has no interest in preserving secrecy here?

23                MR. BOONE:  That's not correct.

24                My client would prefer not to have its identity

25   disclosed to the public.

1          THE COURT:  Do you want to articulate any reasons

2  in a public hearing for why that is?

3          MR. BOONE:  I'd prefer not to at a public hearing.

4          THE COURT:  All right.  Is the corporation willing

5  to participate in the task, should I order it, of -- that is

6  already being undertaken before the Circuit of redacting the

7  briefs, transcripts, and other orders for public versions to

8  be made available to the public?

9          MR. BOONE:  We're happy to participate in that

10  process.

11          THE COURT:  All right.  Thank you.  You may be

12  seated.

13          MR. BOONE:  Thank you, Your Honor.

14          THE COURT:  All right.  Mr. Boutrous.

15          MR. BOUTROUS:  Thank you very much, Your Honor.

16          Thank you, again, for hearing us today, because I

17  think these are very important issues.  I know the Court has

18  been focused on transparency.  We really appreciate the

19  Court issuing the redacted orders --

20          THE COURT:  Just so the record is clear:  The

21  corporation is excused.

22          MR. BOONE:  Thank you, Your Honor.

23          (Whereupon, counsel for the corporation exit the

24  courtroom.)

25          MR. BOUTROUS:  We hate to see them go.  You are

1    welcome to stay, though.

2            We spent on the briefing -- I think you captured

3    it exactly right.  Our first line request to the Court is

4    to, basically, catch up.  A lot has been disclosed, and the

5    Court summarized it, I think, perfectly.

6            We have briefed First Amendment issues and

7    common-law issues.  But I don't think the Court really needs

8    to reach those because Rule 6.1 of this court and

9    Rule 6(e)(6) regarding the unsealing of documents in the

10   D.C. Circuit's decision in *Dow Jones* and *In Re Sealed Case,*

11   this Court's decision in the *CNN* case regarding the *Starr*

12   investigation all demonstrate that just -- basically, the

13   test is whether sealing is necessary to protect --

14           THE COURT:  Mr. Boutrous, are you telling me that

15   you spent so much of your brief talking about the First

16   Amendment right of access and the common-law right of

17   access; but you are telling me now that I really don't have

18   to worry my mind with those more interesting constitutional

19   issues?

20           MR. BOUTROUS:  Only if you don't go with me on the

21   first part.  Because I think that they do provide -- since

22   it is a contempt proceeding, the contempt proceedings which

23   are called out by both rules as potentially being open, and

24   Rule 65 says that it's subject -- closure subject to any

25   right to open this; it doesn't limit it to the witness's

1     rights.  I think that adds a First Amendment dimension.

2         Again, there is a long history of contempt

3     proceedings being open, both to --

4         THE COURT:  Let me just -- let me start with one

5     of the more troublesome aspects of your request and see if

6     we can just get that resolved right now.

7         One of the things that you requested is that the

8     contemnor be identified, which is why I felt it important

9     for the corporation to make clear it does not want to be

10     identified.

11         So from my reading of *Dow Jones*, the

12     D.C. Circuit's decision in 1998, it says in no uncertain

13     terms that the First Amendment does not provide a right of

14     access to the identities of witnesses or jurors in grand

15     jury proceedings.  So doesn't that opinion foreclose

16     disclosure of the corporation's identity here?

17         MR. BOUTROUS:  I don't think so, Your Honor,

18     because it is a contempt proceeding.  I think the public has

19     a particular interest in scrutinizing a contempt proceeding.

20     And this Court's decision on the *Lewinsky, Starr* matter held

21     that there is an inherent power of the Court to release

22     grand jury information beyond the exceptions to the rule --

23     that are contained in Rule 6(e).  Here we really have --

24         THE COURT:  That is a matter that's not pending in

25     front of the D.C. Circuit.  It's not my case, but in another

1     case -- whether I have that inherent authority.

2            MR. BOUTROUS:  Correct.  But I think the Court's

3     decision is absolutely correct.  The Court relied on the

4     decisions from other circuits that are correct.

5            I think the key here is the unique circumstances

6     that we are in, that this is not an ordinary witness.  This,

7     according to the contemnor's counsel, is a country, a

8     nation.  We have foreign policy issues here where this

9     country has been taking the position in this court, to the

10    Supreme Court and back, that they're not even subject to the

11    grand jury --

12            THE COURT:  No.  Let me make sure you are

13    understanding correctly.  The contemnor in this case is a

14    corporation that is owned by a foreign sovereign.  It is not

15    the foreign sovereign itself.

16            MR. BOUTROUS:  All right.  That was what I

17    understood, Your Honor.  But then I noticed that the briefs

18    that the contemnor filed in the Supreme Court referred to

19    itself as "Country A" as opposed to the company.  I'm, of

20    course, working at a disadvantage; I'm reading between the

21    lines.

22            What I inferred from that is that they were

23    seeking to persuade this Court and other courts that they

24    really were one and the same as the country.  And one of the

25    core issues for the public to be able to understand what

1    this case is all about is to know what the facts are and who

2    the company is.

3            It seems to me that here where Special Counsel

4    Mueller has submitted his report to the Attorney General,

5    the Attorney General has submitted a four-page summary -- we

6    don't really know what the conclusions really are; that this

7    is a time for this Court, consistent with the rules, its

8    inherent authority --

9            THE COURT:  And that is -- just so you know, that

10   is one of the questions I will ask the Government to

11   explain, why are we still here, in terms of the fact that

12   the special counsel's report has been delivered and whether

13   this contempt proceeding continues or not.

14           MR. BOUTROUS:  I was wondering what that -- what

15   was the status of that myself because it certainly seemed

16   the report is in.  In reading all of the public materials,

17   including this Court's order --

18           THE COURT:  And the reason that that question is

19   important, I think, is to clarify whether there is a closed

20   grand jury investigation now or whether this is a grand jury

21   investigation that is continuing.  Because I think you would

22   concede, wouldn't you, Mr. Boutrous, that if it is an

23   ongoing grand jury investigation that the redactions and the

24   amount of information that can be publicly disclosed has to

25   be measured against the needs of an ongoing grand jury

1    investigation, correct?

2              MR. BOUTROUS:  Yes, Your Honor.  I agree with

3    that.  It was interesting.  On Friday we filed our reply

4    brief.  And then, suddenly, your decision in the *CNN*,

5    Independent Counsel Starr decision became much more

6    relevant, because we were -- at least, from a public

7    perspective, it seems that the grand jury investigation that

8    was working with Special Counsel Mueller is done.  At least

9    that's what it looks like.

10             If there are strands -- and I guess this contempt

11   proceeding would be one of them -- that needs to be wrapped

12   up, but I think that the arguments for coercing -- I don't

13   mean to make their argument for them -- but coercing the

14   witness now changes, that is something I think the public

15   should be able to scrutinize in how this all plays out with

16   Special Counsel Mueller having wrapped things up and made

17   the report.

18             So I do think that the arguments for disclosure

19   are even stronger -- much stronger for greater disclosure

20   if, in fact, the grand jury investigating the Russia matters

21   and related matters has completed.

22             THE COURT:  But if, in fact -- and we'll hear from

23   the Government -- the grand jury matter is continuing

24   robustly, then that is a significant consideration in terms

25   of the response that may be available to your motion,

1     correct?

2               MR. BOUTROUS:  I agree with that, Your Honor.

3               I think it would -- nonetheless, disclosure -- at

4     least to the extent that has already occurred in the Supreme

5     Court, the D.C. Circuit, this Court's prior orders -- would

6     still then be appropriate because the local rule and

7     Rule 6(e)(6) contemplate disclosure during ongoing grand

8     jury investigations, but the considerations -- the balance

9     would be different; I agree with that, Your Honor.

10              THE COURT:  All right.  So is there anything else

11    that you would like to add to your papers?

12              MR. BOUTROUS:  If I could, Your Honor, on the

13    witness issue.  I do want to -- I think it really is a

14    special situation because we have the public scrutiny and

15    the public attention to this matter which the Court noted in

16    one of its orders.

17              We have the fact that we have a company owned by a

18    foreign nation litigating in our courts all the way to the

19    Supreme Court, briefing things fully.  And the core issue --

20    in order for the public to understand this Court's ruling,

21    that's the one thing we don't know.  We don't know what the

22    facts are regarding this company, who is this company.

23              We know so much about the Mueller investigation.

24    Even without seeing the report, we know a lot.  We know what

25    the focus was.  We know many, many things about it.

1          So it seems that if ever there were a strong

2     public interest for exercising the Court's discretion for

3     considering First Amendment considerations about disclosing

4     the witness's identity -- and I know Mr. Boone said that

5     they would rather their identity remain secret, but it

6     wasn't like they were fighting tooth and nail.  They asked

7     in the D.C. Circuit for permission to file their response to

8     our motion on the record, and then their response was:  We

9     take no position, which I took to mean they weren't exactly

10    viewing this as a crucial thing to keep secret.  They didn't

11    argue there was a reason --

12          THE COURT:  And that's why I had the corporation

13    clarify --

14          MR. BOUTROUS:  Yes.

15          THE COURT:  -- what you thought was being

16    suggested by their notice of no position I thought was not

17    an unreasonable perception of that position; but I knew it

18    was incorrect, which is why the corporation clarified and

19    corrected the impression that you thought had been suggested

20    by their no position on your motion.

21          MR. BOUTROUS:  And I appreciate that, Your Honor.

22          But I would say that even now that I understand

23    their position, it's a farer cry from any sort of compelling

24    reason, any sort of, you know, need to keep it secret.

25          Now, the United States, in their briefs, they --

1     this is the other point I wanted to make, Your Honor.

2          In the D.C. Circuit and the Supreme Court, I

3     argue, yes, we agree; redacted materials can be released in

4     a way that protects grand jury secrecy.  We really

5     appreciate that the transcripts and the briefs in the D.C.

6     Circuit, as you know, are on the verge of coming out.

7          And they told the D.C. Circuit that as to this

8     Court's records, this Court's past position -- now, in their

9     briefs, they seem to be taking the position nothing else

10     should come out because all of this other information has

11     come out; that's, of course, not the standard.  The more

12     that's made public, the less reason there is for secrecy.

13          So we would ask the Court to release as much as

14     possible the entire record in this case.  We know it's all a

15     big task for everyone, but the D.C. Circuit has said that as

16     important as that is --

17          THE COURT:  And you appreciate, as the D.C.

18     Circuit certainly does, and has talked about in *Dow Jones*

19     and in the sequel to *Dow Jones*, proceedings before the

20     Circuit can be far more controlled and measured and

21     certainly take more time than proceedings in front of the

22     District Court in grand jury proceedings.  And,

23     consequently, redactions of transcripts, let's say, or

24     briefing submitted in the course of ancillary grand jury

25     proceedings like contempt proceedings, which are fast

```
 1    moving, have to get a lot of detailed facts in front of the

 2    Court and the witness, and vice versa to the Government, on

 3    a prompt basis and fulsome basis in order for the Court to

 4    make a fair evaluation of the parties' arguments.  But

 5    because of all of those circumstances, which are

 6    characteristic of the nature of grand jury proceedings,

 7    including ancillary proceedings like contempt proceedings

 8    before the District Court, makes redactions a lot more

 9    complicated to make.

10            Do you understand that?

11            MR. BOUTROUS:  I do understand that.  I know the

12    D.C. Circuit noted that it is a different inquiry, so we

13    appreciate that.

14            The Court, in its orders -- I think it was very

15    helpful for us to see the Court's analysis.  But we

16    respectfully request -- and notwithstanding the differences

17    in the inquiry -- that the Court release as much as possible

18    in redacted form because we do know a lot about the case;

19    and it would be interesting to see how it played out with

20    Your Honor and what led the Court -- I mean, contempt is a

21    serious thing.  We know the Court is careful in holding

22    someone in contempt, so we'd like to see what their

23    arguments were before this Court.

24            They seemed -- again, I'm sort of in the peanut

25    gallery here, but I'm fascinated to read how it played out.
```

1          It seemed like their arguments were shifting; they

2     were coming up with new arguments before the Court.  Some of

3     them seemed -- for a company owned by a foreign nation --

4     kind of out there on the edge, and they're saying we don't

5     have to listen to the U.S. courts.  That's something the

6     public should be able to see in an investigation like this,

7     and how it unfolded within this Court, the judge who had to

8     hold them in contempt -- I think it's even more important to

9     see what was being argued to you by both sides and what led

10    the Court to its decisions so we can understand what really

11    the Court was basing its decision on.

12          We really appreciate the Court hearing us.  And we

13    hope the Court would release as much as possible, including

14    the identity of the witness.  I mean, a foreign country

15    comes here, goes into contempt, goes to our Supreme Court,

16    cert is denied, the investigation is over -- we should know

17    who that country is and the company and what it's all about

18    so we can scrutinize their behavior and how our judicial

19    system and the justice department handled it.

20          THE COURT:  And I appreciate the fact that the

21    Reporters Committee has taken the time and engaged quality

22    counsel to come forward and bring these issues teed up for

23    the Court's consideration.  Transparency, particularly when

24    it comes to judicial proceedings, is very important.  There

25    should be no secret law.

1          MR. BOUTROUS:  Thank you, Your Honor.

2          THE COURT:  So I appreciate your efforts here.

3          MR. BOUTROUS:  Thank you very much.

4          THE COURT:  Thank you.

5          Mr. Faruqui.  Mr. Goodhand.

6          So let's start with the first question.  Is the

7     grand jury investigation over?

8          MR. GOODHAND:  No, it is continuing.  I can -- in

9     the Court's words, I can say it's continuing robustly.

10          THE COURT:  All right.  So this is a situation

11     where the Court must evaluate the Reporters Committee

12     request for unsealing in the context of a robust and ongoing

13     grand jury investigation; is that correct?

14          MR. GOODHAND:  Exactly.

15          THE COURT:  All right.

16          Notwithstanding the fact there is an ongoing grand

17     jury investigation, given the fact that there are redacted

18     versions of briefs in front of the Supreme Court, redacted

19     versions of the briefs that are in the process of being done

20     for posting on the D.C. Circuit's docket -- although there

21     are a lot more briefs in front of the District Court, and

22     that makes the administrative work that much more in front

23     of the District Court, why is it that the Government is

24     taking the position of "no" as opposed to allowing for

25     redacted versions of at least the briefing and, if not, some

1      of the transcripts in this matter to be made public?

2                MR. GOODHAND:   Sure.

3                We thought we saw a little bit of schizophrenia in

4      the Reporters Committee's motion, and that's why we did

5      launch an opposition.   When I say that, what I mean is

6      this -- and, in particular, I'm directing the Court's

7      attention to page 13 where the Reporters Committee says:

8      The public has the right of access to contempt proceedings.

9      There can be no doubt that the public has a right of access

10     to the orders, briefs, transcripts, and underlying record in

11     the proceedings before this Court.

12               We were a little concerned that that was a

13     suggestion that -- this is a contempt proceeding, number

14     one, and that means everything gets opened; that was our

15     concern.

16               We certainly understand the mandate of Rule 6.1.

17     We understand the mandate of *Dow Jones*.   And we are

18     perfectly willing to work within the confines of both those

19     constructs to get to roughly the same place that the D.C.

20     Circuit and the Supreme Court has reached with this massive

21     caveat.   There's been a lot of discussion about the identity

22     of the witness.   You know, number one, we have heard from

23     the corporation about that.

24               Number two, I think, in contrast to the Reporters

25     Committee's arguments, Rule 6.1 itself recognizes,

1  consistent with *Dow Jones,* that:  All hearings on matters

2  affecting grand jury shall be closed except for contempt

3  proceedings in which the alleged contemnor requests a public

4  hearing.

5          To my mind, I understand Rule 6.1 to be this:

6  It's an embodiment of the rule -- Rule 6(e), 6(e)(5) and

7  6(e)(6) that the advisory committee has said is consistent

8  with the First Amendment.

9          So Rule 6.1 is sort of a perfect distillation of

10  the balance, on the one hand, of grand jury matters and, on

11  the other hand, the First Amendment.  So we are willing to

12  work within the confines of Rule 6.1, and we will.  It will

13  be a burden.  We will endeavor to do that, just as things

14  have already done -- others have done that at other levels.

15          But we were concerned about, sort of, the blanket

16  suggestion that the First Amendment puts this category of

17  proceeding in a different posture than a typical ancillary

18  grand jury matter.  This is an ancillary grand jury matter.

19  It is not a contempt proceeding and, thus, all bets are off.

20  I think that answers the question that has been raised with

21  respect to the identity of the contemnor.

22          So, with that said, of course -- with those

23  caveats -- again, that was the basis, essentially, for our

24  opposition here.  We're willing to work with the Court and

25  the Reporters Committee.

1      THE COURT:  All right.  And how much time do you

2   think that the Government would need, beginning with -- I

3   think what would be easiest is the redaction of briefing in

4   the matter, in cooperation with the corporation's counsel,

5   before turning to looking at whether any transcripts can be

6   redacted in a way that leaves anything intelligible left to

7   be read.

8      MR. GOODHAND:  Sure.  Sure.

9      THE COURT:  How much time would you need?

10     MR. GOODHAND:  I would like -- I think I

11  understand the Court's general timetable to be a month.  I

12  would appreciate that for a couple of reasons.

13     As the Court and indexed newspapers outlined, when

14  you have voluminous materials, there are risks attendant,

15  sort of, inadvertent disclosures; we don't want to go down

16  that road.  There are great consequences attendant to

17  inadvertent disclosures.  So if the Court was willing to

18  grant us the luxury of that time, we would greatly

19  appreciate it because of the volume.

20     THE COURT:  All right.  I am going to be issuing a

21  memorandum, an order on this matter and this particular

22  motion, to make clear what is being done and what my order

23  is; and I will take the month-long request into

24  consideration.

25     I think you are also going to have to be

```
 1          consulting with the corporation's counsel.

 2                    MR. GOODHAND:  Yes.

 3                    THE COURT:  So I think a month may be even, you

 4          know, too tight a time frame; but I will let you work that

 5          out with the corporation.  Thank you.

 6                    MR. GOODHAND:  Okay.  Thank you, Your Honor.

 7                    THE COURT:  Mr. Boutrous.

 8                    MR. BOUTROUS:  Yes, Your Honor.

 9                    THE COURT:  You have won a huge chunk of your

10          motion --

11                    MR. BOUTROUS:  Yes, so I am going to say very

12          little.

13                    THE COURT:  -- with the Government; and I will

14          take under consideration your request for the additional

15          disclosure of the contemnor corporation's identity.

16                    Is there anything you would like to respond to?

17                    MR. BOUTROUS:  Really just --

18                    THE COURT:  You won.  You might just want to sit

19          down.

20                    MR. BOUTROUS:  With that, Your Honor, I would like

21          to wrap up.  Thank you, Your Honor.

22                    THE COURT:  Thank you.  You are all excused.

23                    THE DEPUTY:  All rise.

24                    (Whereupon, the proceeding concludes.)

25                              *  *  *  *  *
```

## **CERTIFICATE**

I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 27th day of March, 2019.

/s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

*In re:*

*Application of the Reporters Committee for*
*Freedom of the Press for an Order Authorizing*
*the Release of Grand Jury Material Cited,*
*Quoted, or Referenced In the Report of Special*
*Counsel Robert S. Mueller III,*

1156 15th Street NW, Suite 1020
Washington, D.C. 20005

Miscellaneous Action No. _____

## ORDER

On consideration of the Application of the Reporters Committee for Freedom of the Press

pursuant to Local Criminal Rule 57.6, it is HEREBY:

ORDERED that the Application is GRANTED; and it is further

ORDERED that grand jury material cited, quoted, or referenced in the Special Counsel's

Report may be publicly released pursuant to this Court's inherent authority and the exceptions

set forth in Federal Rule of Criminal Procedure 6(e).

SO ORDERED on this _____ day of _____, 20____.

_____

1