**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

*In re:*

*Application of the Reporters Committee for*
*Freedom of the Press for an Order Authorizing*
*the Release of Grand Jury Material Cited,*
*Quoted, or Referenced In the Report of Special*
*Counsel Robert S. Mueller III,*

1156 15th Street NW, Suite 1020
Washington, D.C. 20005

Miscellaneous Action No. _____

---

### DECLARATION OF AMIR C. TAYRANI IN SUPPORT OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS'S APPLICATION

I, AMIR C. TAYRANI, hereby declare under penalty of perjury the following:

1.      My name is Amir C. Tayrani of Gibson, Dunn & Crutcher LLP.  I represent Reporters Committee for Freedom of the Press in the above-captioned matter.  By virtue of my direct involvement in this matter, I have personal knowledge of the content of this declaration, and I could and would competently testify to the truth of the matters stated herein.

2.      Attached as **Exhibit 1** is a true and correct copy of a Freedom of Information Act Request submitted by letter on behalf of the Reporters Committee for Freedom of the Press to the Office of the Attorney General on March 27, 2019.

3.      Attached as **Exhibit 2** is a true and accurate copy of a transcript of a hearing before the Honorable Beryl A. Howell, United States District Court Chief Judge, on the Reporters Committee for Freedom of the Press's motion to unseal in *In re: Grand Jury Subpoena* 7049, No. GJ 18-41, held on March 27, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 1, 2019

Respectfully submitted,

Amir C. Tayrani (D.C. Bar No. 490994)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel:  (202) 887-3692
atayrani@gibsondunn.com

*Counsel for Applicant*
*Reporters Committee for Freedom of the Press*

# Exhibit 1

**REPORTERS COMMITTEE**

**FOR FREEDOM OF THE PRESS**

1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
www.rcfp.org

Bruce D. Brown
Executive Director
bbrown@rcfp.org
(202) 795-9301

STEERING COMMITTEE

STEPHEN J. ADLER
*Reuters*

SCOTT APPLEWHITE
*The Associated Press*

WOLF BLITZER
*CNN*

DAVID BOARDMAN
*Temple University*

CHIP BOK
*Creators Syndicate*

MASSIMO CALABRESI
*Time Magazine*

MANNY GARCIA
*USA TODAY NETWORK*

EMILIO GARCIA-RUIZ
*The Washington Post*

JOSH GERSTEIN
*POLITICO*

ALEX GIBNEY
*Jigsaw Productions*

SUSAN GOLDBERG
*National Geographic*

JAMES GRIMALDI
*The Wall Street Journal*

LAURA HANDMAN
*Davis Wright Tremaine*

JOHN C. HENRY
*Freelance*

KAREN KAISER
*The Associated Press*

DAVID LAUTER
*Los Angeles Times*

DAHLIA LITHWICK
*Slate*

MARGARET LOW
*The Atlantic*

TONY MAURO
*National Law Journal*

JANE MAYER
*The New Yorker*

ANDREA MITCHELL
*NBC News*

MAGGIE MULVIHILL
*Boston University*

JAMES NEFF
*Philadelphia Media Network*

CAROL ROSENBERG
*The Miami Herald*

THOMAS C. RUBIN
*Quinn Emanuel*

CHARLIE SAVAGE
*The New York Times*

BEN SMITH
*BuzzFeed*

JENNIFER SONDAG
*Bloomberg News*

PIERRE THOMAS
*ABC News*

SAUNDRA TORRY
*USA TODAY*

VICKIE WALTON-JAMES
*NPR*

JUDY WOODRUFF
*PBS/The NewsHour*

*Senior Advisor:*
PAUL STEIGER
*ProPublica*

*Affiliations appear only
for purposes of identification.*

Adam A. Marshall
Reporters Committee for Freedom of the Press
1156 15th St. NW, Suite 1020
Washington, DC 20005
amarshall@rcfp.org

Office of the Attorney General
Department of Justice
Washington, D.C.

March 27, 2019

VIA FOIAOnline

**RE: Freedom of Information Act Request**

To Whom It May Concern:

This letter constitutes a request under the federal Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and is submitted on behalf of the Reporters Committee for Freedom of the Press ("Reporters Committee" or "RCFP") to the Office of the Attorney General ("OAG") at the United States Department of Justice ("DOJ" or the "Department"). The Reporters Committee is a nonprofit association dedicated to protecting First Amendment freedoms and the newsgathering rights of journalists.[1]

I. **Background**

For your information, and in order to facilitate the location of responsive records, this request relates to report submitted by Special Counsel Robert S. Muller III (the "Special Counsel") to the Attorney General on or about March 22, 2019. *See, e.g.*, Letter from Attorney General William P. Barr to Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins (Mar. 24, 2019).[2]

II. **Requested Record**

Pursuant to the FOIA, I, on behalf of the Reporters Committee, request access to and copies of the Special Counsel's report transmitted to the Attorney General on or about March 22, 2019, titled "Report on the Investigation into Russian Interference in the 2016 Presidential Election."

[1] *See generally* www.rcfp.org.

[2] *Archived at* https://perma.cc/VG4A-M27U.

Please provide all responsive records in electronic format.

## II.  Fees and Fee Categorization

As a representative of the news media, the Reporters Committee is only required to pay for the direct cost of duplication after the first 100 pages.  5 U.S.C. § 552(a)(4)(A)(ii)(II).  This information is being sought on behalf of the Reporters Committee for, *inter alia*, analysis and free dissemination to the general public through multiple avenues, including RCFP's website,[3] social media accounts,[4] and email newsletters.[5]  These records are not being sought for commercial purposes.

In the event that there are fees for responding to this request, the Reporters Committee is willing to pay up to $50.  Please let me know in advance if fees for responding to this request will exceed that amount before proceeding.

## III.  Conclusion

If this request is denied in whole or part, please justify all such denials by reference to specific exemptions and explain why OAG "reasonably foresees that disclosure would harm an interest" protected by that exemption or why "disclosure is prohibited by law[.]"  5 U.S.C. § 552(a)(8).  Please also ensure that all segregable portions of otherwise exempt material are released.

If you have any questions regarding this request, please feel free to contact me at amarshall@rcfp.org.  Thank you in advance for your assistance.

Sincerely,

Adam A. Marshall
Knight Foundation Litigation Attorney
Reporters Committee for Freedom of the Press

---

[3] https://www.rcfp.org/.
[4] *See, e.g.,* https://twitter.com/rcfp (~15.3 thousand followers as of March 28, 2019);
https://www.facebook.com/ReportersCommittee/ (7,965 "likes" as of March 28, 2019).
[5] https://rcfp.us15.list-manage.com/subscribe?u=682100887bbcfff066b451132&id=8f701b284f.

Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
IN RE:                          )  GJ 18-41
Grand Jury Subpoena 7049        )
                                )
Interested Parties,             )  March 27, 2019
CORPORATION,                    )  11:28 a.m.
GOVERNMENT,                     )  Washington, D.C.
MOVANT,                         )
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

**APPEARANCES**:

**FOR THE CORPORATION:**      BRIAN BOONE
                              KARL GEERCKEN
                              EDWARD T. KANG
                              LEE DENEEN
                              Alston & Bird
                              90 Park Avenue
                              New York, NY 10016

**FOR THE GOVERNMENT:**       DAVID B. GOODHAND
                              ZIA M. FARUQUI
                              PETER C. LALLAS
                              U.S. Department of Justice
                              Washington, D.C. 20530

**FOR THE MOVANT:**           THEODORE J. BOUTROUS, JR.
                              LEE R. CRAIN
                              KATIE TOWNSEND
                              Gibson, Dunn & Crutcher LLP
                              333 South Grand Avenue
                              Los Angeles, CA 90071-3197


Court Reporter:               Elizabeth Saint-Loth, RPR, FCRR
                              Official Court Reporter
                              Washington, D.C.  20001


Proceedings reported by machine shorthand, transcript
produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S

 2              THE DEPUTY:  Matter before the Court, grand jury

 3      matter 18-41 in regards to grand jury subpoena No. 7049,

 4      Counsel for the interested party, corporation; Government;

 5      movant, Reporters Committee For Freedom of the Press.

 6              Please come forward and identify yourselves for

 7      the record.

 8              MR. BOUTROUS:  Good morning, Your Honor.

 9      Theodore Boutrous for the Reporters Committee For Freedom of

10      the Press.  I am joined by my colleagues Lee Crain and Katie

11      Townsend from the Reporters Committee.

12              We are pleased to be here.  Thank you, Your Honor.

13              THE COURT:  Yes.  Good morning.

14              The Government -- well, Mr. Boone.

15              MR. BOONE:  Brian Boone from Alston & Bird for the

16      corporation.  With me today are Karl Geercken, Ted Kang, and

17      Lee Deneen, also from Alston & Bird.

18              THE COURT:  Yes.  Thank you.

19              MR. GOODHAND:  Good morning, Your Honor.

20      David Goodhand for the United States.  With me at counsel's

21      table is Zia Faruqui and Peter Lallas.

22              THE COURT:  All right.  Well, welcome, everybody.

23              Let me just begin by reviewing where we are in the

24      case because the Reporters Committee has before me a motion

25      to unseal redacted versions, by my count, of the briefs, the
```

1    record, transcripts and orders in this action, as well as

2    the identity of the corporation, that is, the contemnor.

3         And let me just start by making clear or

4    summarizing what's already been made public in this case at

5    multiple levels of the federal judiciary.

6         In the District Court, I have already released a

7    redacted copy of the docket sheet as of January 31, 2019;

8    redacted copies of six memoranda, including the contempt

9    order in this case, which is docketed at ECF 30.  The D.C.

10   Circuit has made the docket public, as well as redacted

11   forms of its opinion, the parties' briefs regarding

12   unsealing.

13        And my understanding is that the parties before

14   the D.C. Circuit are in the midst right now of an ongoing

15   effort to redact the parties' substantive briefs so that

16   redacted versions of those briefs can be made public.

17        The Supreme Court has made the docket itself

18   public, as well as redacted versions of the parties' briefs

19   regarding the stay of the contempt order in this case;

20   redacted versions of the parties' briefs regarding the

21   petition for certiori; and unredacted versions of the

22   parties' briefing regarding the Reporters Committee's motion

23   to unseal before the Supreme Court.  Neither the D.C.

24   Circuit nor the Supreme Court has revealed the identity of

25   the contemnor.

1          So part -- from where I sit, part of the Reporters

2     Committee motion seeking redacted versions of the briefing

3     is, in some ways, just to have this Court catch up with the

4     redacted versions of briefing that is already available on

5     the Supreme Court docket, and I think is going to be made

6     available on the D.C. Circuit's docket.

7          Mr. Goodhand, is that a fairly accurate summary?

8          MR. GOODHAND:  Yes, that's my understanding, Your

9     Honor.

10         THE COURT:  Okay.  Do you know when, before the

11     D.C. Circuit, all of those redacted versions of briefs will

12     be made available?

13         MR. GOODHAND:  Your Honor, actually -- I'm sorry.

14         I communicated this morning with the assistant to

15     handle this matter in the D.C. Circuit.  And I actually

16     asked if the redactions had been completed of both briefs,

17     and the transcripts of the oral argument.  He emailed those

18     to me.  And I actually didn't follow up -- I didn't have

19     time, actually, to follow up and see whether they had been

20     filed.  That suggests to me, however, if they haven't

21     already been filed, it is very soon.

22         THE COURT:  All right.  Well, I think, from my

23     review of the docket there, the corporation doesn't have to

24     respond until March 27th.  So I don't think that any of them

25     have been actually filed yet.  You are just still in the

1    process of going back with redactions.

2                    Is that correct, Mr. Boone?

3                    MR. BOONE:  That's correct, Your Honor.

4                    THE COURT:  All right.  Okay.

5                    So I am going to -- just so everybody understands

6    the structure of how I'm going to conduct the hearing this

7    morning, I am going to start with some clarifying questions

8    to Mr. Boone on behalf of the corporation, and then I will

9    turn to the Reporters Committee.

10                   So just to begin, Mr. Boone, on behalf of the

11   corporation, the corporation is aware that it had the right

12   to request that the contempt proceedings in this matter be

13   open to the public; is that correct?

14                   MR. BOONE:  That is correct, Your Honor.

15                   THE COURT:  And just to confirm, no such request

16   was ever made; is that correct?

17                   MR. BOONE:  That's right.

18                   THE COURT:  The Reporters Committee highlights the

19   fact that the corporation has taken no position on its

20   unsealing request, suggesting that the corporation has no

21   interest in preserving secrecy here.  Is it correct that the

22   corporation has no interest in preserving secrecy here?

23                   MR. BOONE:  That's not correct.

24                   My client would prefer not to have its identity

25   disclosed to the public.

1          THE COURT:  Do you want to articulate any reasons

2     in a public hearing for why that is?

3          MR. BOONE:  I'd prefer not to at a public hearing.

4          THE COURT:  All right.  Is the corporation willing

5     to participate in the task, should I order it, of -- that is

6     already being undertaken before the Circuit of redacting the

7     briefs, transcripts, and other orders for public versions to

8     be made available to the public?

9          MR. BOONE:  We're happy to participate in that

10    process.

11         THE COURT:  All right.  Thank you.  You may be

12    seated.

13         MR. BOONE:  Thank you, Your Honor.

14         THE COURT:  All right.  Mr. Boutrous.

15         MR. BOUTROUS:  Thank you very much, Your Honor.

16         Thank you, again, for hearing us today, because I

17    think these are very important issues.  I know the Court has

18    been focused on transparency.  We really appreciate the

19    Court issuing the redacted orders --

20         THE COURT:  Just so the record is clear:  The

21    corporation is excused.

22         MR. BOONE:  Thank you, Your Honor.

23         (Whereupon, counsel for the corporation exit the

24    courtroom.)

25         MR. BOUTROUS:  We hate to see them go.  You are

1    welcome to stay, though.

2            We spent on the briefing -- I think you captured

3    it exactly right.  Our first line request to the Court is

4    to, basically, catch up.  A lot has been disclosed, and the

5    Court summarized it, I think, perfectly.

6            We have briefed First Amendment issues and

7    common-law issues.  But I don't think the Court really needs

8    to reach those because Rule 6.1 of this court and

9    Rule 6(e)(6) regarding the unsealing of documents in the

10   D.C. Circuit's decision in *Dow Jones* and *In Re Sealed Case,*

11   this Court's decision in the *CNN* case regarding the *Starr*

12   investigation all demonstrate that just -- basically, the

13   test is whether sealing is necessary to protect --

14           THE COURT:  Mr. Boutrous, are you telling me that

15   you spent so much of your brief talking about the First

16   Amendment right of access and the common-law right of

17   access; but you are telling me now that I really don't have

18   to worry my mind with those more interesting constitutional

19   issues?

20           MR. BOUTROUS:  Only if you don't go with me on the

21   first part.  Because I think that they do provide -- since

22   it is a contempt proceeding, the contempt proceedings which

23   are called out by both rules as potentially being open, and

24   Rule 65 says that it's subject -- closure subject to any

25   right to open this; it doesn't limit it to the witness's

1    rights.  I think that adds a First Amendment dimension.

2            Again, there is a long history of contempt

3    proceedings being open, both to --

4            THE COURT:  Let me just -- let me start with one

5    of the more troublesome aspects of your request and see if

6    we can just get that resolved right now.

7            One of the things that you requested is that the

8    contemnor be identified, which is why I felt it important

9    for the corporation to make clear it does not want to be

10   identified.

11           So from my reading of *Dow Jones*, the

12   D.C. Circuit's decision in 1998, it says in no uncertain

13   terms that the First Amendment does not provide a right of

14   access to the identities of witnesses or jurors in grand

15   jury proceedings.  So doesn't that opinion foreclose

16   disclosure of the corporation's identity here?

17           MR. BOUTROUS:  I don't think so, Your Honor,

18   because it is a contempt proceeding.  I think the public has

19   a particular interest in scrutinizing a contempt proceeding.

20   And this Court's decision on the *Lewinsky, Starr* matter held

21   that there is an inherent power of the Court to release

22   grand jury information beyond the exceptions to the rule --

23   that are contained in Rule 6(e).  Here we really have --

24           THE COURT:  That is a matter that's not pending in

25   front of the D.C. Circuit.  It's not my case, but in another

1    case -- whether I have that inherent authority.

2           MR. BOUTROUS:  Correct.  But I think the Court's

3    decision is absolutely correct.  The Court relied on the

4    decisions from other circuits that are correct.

5           I think the key here is the unique circumstances

6    that we are in, that this is not an ordinary witness.  This,

7    according to the contemnor's counsel, is a country, a

8    nation.  We have foreign policy issues here where this

9    country has been taking the position in this court, to the

10    Supreme Court and back, that they're not even subject to the

11    grand jury --

12           THE COURT:  No.  Let me make sure you are

13    understanding correctly.  The contemnor in this case is a

14    corporation that is owned by a foreign sovereign.  It is not

15    the foreign sovereign itself.

16           MR. BOUTROUS:  All right.  That was what I

17    understood, Your Honor.  But then I noticed that the briefs

18    that the contemnor filed in the Supreme Court referred to

19    itself as "Country A" as opposed to the company.  I'm, of

20    course, working at a disadvantage; I'm reading between the

21    lines.

22           What I inferred from that is that they were

23    seeking to persuade this Court and other courts that they

24    really were one and the same as the country.  And one of the

25    core issues for the public to be able to understand what

1    this case is all about is to know what the facts are and who

2    the company is.

3            It seems to me that here where Special Counsel

4    Mueller has submitted his report to the Attorney General,

5    the Attorney General has submitted a four-page summary -- we

6    don't really know what the conclusions really are; that this

7    is a time for this Court, consistent with the rules, its

8    inherent authority --

9            THE COURT:  And that is -- just so you know, that

10   is one of the questions I will ask the Government to

11   explain, why are we still here, in terms of the fact that

12   the special counsel's report has been delivered and whether

13   this contempt proceeding continues or not.

14           MR. BOUTROUS:  I was wondering what that -- what

15   was the status of that myself because it certainly seemed

16   the report is in.  In reading all of the public materials,

17   including this Court's order --

18           THE COURT:  And the reason that that question is

19   important, I think, is to clarify whether there is a closed

20   grand jury investigation now or whether this is a grand jury

21   investigation that is continuing.  Because I think you would

22   concede, wouldn't you, Mr. Boutrous, that if it is an

23   ongoing grand jury investigation that the redactions and the

24   amount of information that can be publicly disclosed has to

25   be measured against the needs of an ongoing grand jury

1    investigation, correct?

2              MR. BOUTROUS:  Yes, Your Honor.  I agree with

3    that.  It was interesting.  On Friday we filed our reply

4    brief.  And then, suddenly, your decision in the *CNN*,

5    Independent Counsel Starr decision became much more

6    relevant, because we were -- at least, from a public

7    perspective, it seems that the grand jury investigation that

8    was working with Special Counsel Mueller is done.  At least

9    that's what it looks like.

10             If there are strands -- and I guess this contempt

11   proceeding would be one of them -- that needs to be wrapped

12   up, but I think that the arguments for coercing -- I don't

13   mean to make their argument for them -- but coercing the

14   witness now changes, that is something I think the public

15   should be able to scrutinize in how this all plays out with

16   Special Counsel Mueller having wrapped things up and made

17   the report.

18             So I do think that the arguments for disclosure

19   are even stronger -- much stronger for greater disclosure

20   if, in fact, the grand jury investigating the Russia matters

21   and related matters has completed.

22             THE COURT:  But if, in fact -- and we'll hear from

23   the Government -- the grand jury matter is continuing

24   robustly, then that is a significant consideration in terms

25   of the response that may be available to your motion,

1    correct?

2                    MR. BOUTROUS:  I agree with that, Your Honor.

3                    I think it would -- nonetheless, disclosure -- at

4    least to the extent that has already occurred in the Supreme

5    Court, the D.C. Circuit, this Court's prior orders -- would

6    still then be appropriate because the local rule and

7    Rule 6(e)(6) contemplate disclosure during ongoing grand

8    jury investigations, but the considerations -- the balance

9    would be different; I agree with that, Your Honor.

10                   THE COURT:  All right.  So is there anything else

11   that you would like to add to your papers?

12                   MR. BOUTROUS:  If I could, Your Honor, on the

13   witness issue.  I do want to -- I think it really is a

14   special situation because we have the public scrutiny and

15   the public attention to this matter which the Court noted in

16   one of its orders.

17                   We have the fact that we have a company owned by a

18   foreign nation litigating in our courts all the way to the

19   Supreme Court, briefing things fully.  And the core issue --

20   in order for the public to understand this Court's ruling,

21   that's the one thing we don't know.  We don't know what the

22   facts are regarding this company, who is this company.

23                   We know so much about the Mueller investigation.

24   Even without seeing the report, we know a lot.  We know what

25   the focus was.  We know many, many things about it.

1          So it seems that if ever there were a strong

2    public interest for exercising the Court's discretion for

3    considering First Amendment considerations about disclosing

4    the witness's identity -- and I know Mr. Boone said that

5    they would rather their identity remain secret, but it

6    wasn't like they were fighting tooth and nail.  They asked

7    in the D.C. Circuit for permission to file their response to

8    our motion on the record, and then their response was:  We

9    take no position, which I took to mean they weren't exactly

10   viewing this as a crucial thing to keep secret.  They didn't

11   argue there was a reason --

12          THE COURT:  And that's why I had the corporation

13   clarify --

14          MR. BOUTROUS:  Yes.

15          THE COURT:  -- what you thought was being

16   suggested by their notice of no position I thought was not

17   an unreasonable perception of that position; but I knew it

18   was incorrect, which is why the corporation clarified and

19   corrected the impression that you thought had been suggested

20   by their no position on your motion.

21          MR. BOUTROUS:  And I appreciate that, Your Honor.

22          But I would say that even now that I understand

23   their position, it's a farer cry from any sort of compelling

24   reason, any sort of, you know, need to keep it secret.

25          Now, the United States, in their briefs, they --

1    this is the other point I wanted to make, Your Honor.

2         In the D.C. Circuit and the Supreme Court, I

3    argue, yes, we agree; redacted materials can be released in

4    a way that protects grand jury secrecy.  We really

5    appreciate that the transcripts and the briefs in the D.C.

6    Circuit, as you know, are on the verge of coming out.

7         And they told the D.C. Circuit that as to this

8    Court's records, this Court's past position -- now, in their

9    briefs, they seem to be taking the position nothing else

10    should come out because all of this other information has

11    come out; that's, of course, not the standard.  The more

12    that's made public, the less reason there is for secrecy.

13         So we would ask the Court to release as much as

14    possible the entire record in this case.  We know it's all a

15    big task for everyone, but the D.C. Circuit has said that as

16    important as that is --

17         THE COURT:  And you appreciate, as the D.C.

18    Circuit certainly does, and has talked about in *Dow Jones*

19    and in the sequel to *Dow Jones*, proceedings before the

20    Circuit can be far more controlled and measured and

21    certainly take more time than proceedings in front of the

22    District Court in grand jury proceedings.  And,

23    consequently, redactions of transcripts, let's say, or

24    briefing submitted in the course of ancillary grand jury

25    proceedings like contempt proceedings, which are fast

1    moving, have to get a lot of detailed facts in front of the

2    Court and the witness, and vice versa to the Government, on

3    a prompt basis and fulsome basis in order for the Court to

4    make a fair evaluation of the parties' arguments.  But

5    because of all of those circumstances, which are

6    characteristic of the nature of grand jury proceedings,

7    including ancillary proceedings like contempt proceedings

8    before the District Court, makes redactions a lot more

9    complicated to make.

10            Do you understand that?

11            MR. BOUTROUS:  I do understand that.  I know the

12   D.C. Circuit noted that it is a different inquiry, so we

13   appreciate that.

14            The Court, in its orders -- I think it was very

15   helpful for us to see the Court's analysis.  But we

16   respectfully request -- and notwithstanding the differences

17   in the inquiry -- that the Court release as much as possible

18   in redacted form because we do know a lot about the case;

19   and it would be interesting to see how it played out with

20   Your Honor and what led the Court -- I mean, contempt is a

21   serious thing.  We know the Court is careful in holding

22   someone in contempt, so we'd like to see what their

23   arguments were before this Court.

24            They seemed -- again, I'm sort of in the peanut

25   gallery here, but I'm fascinated to read how it played out.

1          It seemed like their arguments were shifting; they

2     were coming up with new arguments before the Court.  Some of

3     them seemed -- for a company owned by a foreign nation --

4     kind of out there on the edge, and they're saying we don't

5     have to listen to the U.S. courts.  That's something the

6     public should be able to see in an investigation like this,

7     and how it unfolded within this Court, the judge who had to

8     hold them in contempt -- I think it's even more important to

9     see what was being argued to you by both sides and what led

10     the Court to its decisions so we can understand what really

11     the Court was basing its decision on.

12          We really appreciate the Court hearing us.  And we

13     hope the Court would release as much as possible, including

14     the identity of the witness.  I mean, a foreign country

15     comes here, goes into contempt, goes to our Supreme Court,

16     cert is denied, the investigation is over -- we should know

17     who that country is and the company and what it's all about

18     so we can scrutinize their behavior and how our judicial

19     system and the justice department handled it.

20          THE COURT:  And I appreciate the fact that the

21     Reporters Committee has taken the time and engaged quality

22     counsel to come forward and bring these issues teed up for

23     the Court's consideration.  Transparency, particularly when

24     it comes to judicial proceedings, is very important.  There

25     should be no secret law.

1          MR. BOUTROUS:  Thank you, Your Honor.

2          THE COURT:  So I appreciate your efforts here.

3          MR. BOUTROUS:  Thank you very much.

4          THE COURT:  Thank you.

5          Mr. Faruqui.  Mr. Goodhand.

6          So let's start with the first question.  Is the

7     grand jury investigation over?

8          MR. GOODHAND:  No, it is continuing.  I can -- in

9     the Court's words, I can say it's continuing robustly.

10          THE COURT:  All right.  So this is a situation

11     where the Court must evaluate the Reporters Committee

12     request for unsealing in the context of a robust and ongoing

13     grand jury investigation; is that correct?

14          MR. GOODHAND:  Exactly.

15          THE COURT:  All right.

16          Notwithstanding the fact there is an ongoing grand

17     jury investigation, given the fact that there are redacted

18     versions of briefs in front of the Supreme Court, redacted

19     versions of the briefs that are in the process of being done

20     for posting on the D.C. Circuit's docket -- although there

21     are a lot more briefs in front of the District Court, and

22     that makes the administrative work that much more in front

23     of the District Court, why is it that the Government is

24     taking the position of "no" as opposed to allowing for

25     redacted versions of at least the briefing and, if not, some

1      of the transcripts in this matter to be made public?

2                 MR. GOODHAND:   Sure.

3                 We thought we saw a little bit of schizophrenia in

4      the Reporters Committee's motion, and that's why we did

5      launch an opposition.   When I say that, what I mean is

6      this -- and, in particular, I'm directing the Court's

7      attention to page 13 where the Reporters Committee says:

8      The public has the right of access to contempt proceedings.

9      There can be no doubt that the public has a right of access

10     to the orders, briefs, transcripts, and underlying record in

11     the proceedings before this Court.

12                We were a little concerned that that was a

13     suggestion that -- this is a contempt proceeding, number

14     one, and that means everything gets opened; that was our

15     concern.

16                We certainly understand the mandate of Rule 6.1.

17     We understand the mandate of *Dow Jones*.   And we are

18     perfectly willing to work within the confines of both those

19     constructs to get to roughly the same place that the D.C.

20     Circuit and the Supreme Court has reached with this massive

21     caveat.   There's been a lot of discussion about the identity

22     of the witness.   You know, number one, we have heard from

23     the corporation about that.

24                Number two, I think, in contrast to the Reporters

25     Committee's arguments, Rule 6.1 itself recognizes,

1   consistent with *Dow Jones,* that:  All hearings on matters

2   affecting grand jury shall be closed except for contempt

3   proceedings in which the alleged contemnor requests a public

4   hearing.

5        To my mind, I understand Rule 6.1 to be this:

6   It's an embodiment of the rule -- Rule 6(e), 6(e)(5) and

7   6(e)(6) that the advisory committee has said is consistent

8   with the First Amendment.

9        So Rule 6.1 is sort of a perfect distillation of

10  the balance, on the one hand, of grand jury matters and, on

11  the other hand, the First Amendment.  So we are willing to

12  work within the confines of Rule 6.1, and we will.  It will

13  be a burden.  We will endeavor to do that, just as things

14  have already done -- others have done that at other levels.

15       But we were concerned about, sort of, the blanket

16  suggestion that the First Amendment puts this category of

17  proceeding in a different posture than a typical ancillary

18  grand jury matter.  This is an ancillary grand jury matter.

19  It is not a contempt proceeding and, thus, all bets are off.

20  I think that answers the question that has been raised with

21  respect to the identity of the contemnor.

22       So, with that said, of course -- with those

23  caveats -- again, that was the basis, essentially, for our

24  opposition here.  We're willing to work with the Court and

25  the Reporters Committee.

1          THE COURT:  All right.  And how much time do you

2     think that the Government would need, beginning with -- I

3     think what would be easiest is the redaction of briefing in

4     the matter, in cooperation with the corporation's counsel,

5     before turning to looking at whether any transcripts can be

6     redacted in a way that leaves anything intelligible left to

7     be read.

8          MR. GOODHAND:  Sure.  Sure.

9          THE COURT:  How much time would you need?

10          MR. GOODHAND:  I would like -- I think I

11     understand the Court's general timetable to be a month.  I

12     would appreciate that for a couple of reasons.

13          As the Court and indexed newspapers outlined, when

14     you have voluminous materials, there are risks attendant,

15     sort of, inadvertent disclosures; we don't want to go down

16     that road.  There are great consequences attendant to

17     inadvertent disclosures.  So if the Court was willing to

18     grant us the luxury of that time, we would greatly

19     appreciate it because of the volume.

20          THE COURT:  All right.  I am going to be issuing a

21     memorandum, an order on this matter and this particular

22     motion, to make clear what is being done and what my order

23     is; and I will take the month-long request into

24     consideration.

25          I think you are also going to have to be

1    consulting with the corporation's counsel.

2              MR. GOODHAND:  Yes.

3              THE COURT:  So I think a month may be even, you

4    know, too tight a time frame; but I will let you work that

5    out with the corporation.  Thank you.

6              MR. GOODHAND:  Okay.  Thank you, Your Honor.

7              THE COURT:  Mr. Boutrous.

8              MR. BOUTROUS:  Yes, Your Honor.

9              THE COURT:  You have won a huge chunk of your

10   motion --

11             MR. BOUTROUS:  Yes, so I am going to say very

12   little.

13             THE COURT:  -- with the Government; and I will

14   take under consideration your request for the additional

15   disclosure of the contemnor corporation's identity.

16             Is there anything you would like to respond to?

17             MR. BOUTROUS:  Really just --

18             THE COURT:  You won.  You might just want to sit

19   down.

20             MR. BOUTROUS:  With that, Your Honor, I would like

21   to wrap up.  Thank you, Your Honor.

22             THE COURT:  Thank you.  You are all excused.

23             THE DEPUTY:  All rise.

24             (Whereupon, the proceeding concludes.)

25                        *  *  *  *  *

## **CERTIFICATE**


I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.


Dated this 27th day of March, 2019.


/s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter