## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                 )

| | |
|---|---|
| IN RE: APPLICATION OF THE REPORTERS ) | |
| COMMITTEE FOR FREEDOM OF THE PRESS ) | |
| FOR AN ORDER AUTHORIZING THE ) | Misc. No. 19-045 (BAH) |
| RELEASE OF GRAND JURY MATERIAL ) | |
| CITED, QUOTED, OR REFERENCED IN THE ) | |
| REPORT OF SPECIAL COUNSEL ROBERT ) | |
| S. MUELLER III ) | |

_____)

### GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
### AND MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION TO DISMISS OR
### DENY THE APPLICATION WITHOUT PREJUDICE

### INTRODUCTION

Reporters Committee for Freedom of the Press ("Reporters Committee") brought this Application in an effort to procure the release of grand jury information redacted from or referenced in the confidential report submitted by Special Counsel Robert S. Mueller, III to the Attorney General pursuant to 28 C.F.R. § 600.8.[1] ("Mueller Report" or "Report").  The Report was released to the public with redactions on April 18, 2019.

The primary legal theory underpinning the Application was the Court's alleged "inherent authority" to disclose grand jury information in the public interest outside the confines of Federal Rule of Criminal Procedure 6(e).  Whether a district court possesses inherent authority to authorize such a disclosure was an issue pending before the D.C. Circuit at the time Reporters Committee filed its application.  Hedging its bet on the outcome of the D.C. Circuit's decision, Reporters Committee also included in its Application a short argument as to why its request also fits within the text of Criminal Rule 6(e), and urged the Court, alternatively, to grant the

---

[1] The Report is entitled "Report On The Investigation Into Russian Interference In The 2016 Presidential Election."

Application on that basis.  Just days after the Application was filed, however, the D.C. Circuit

ruled that courts lack inherent authority to deviate from the express terms of Rule 6(e).

*McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019, *rehearing denied*, July 22, 2019.  Stripped of

the inherent authority based arguments, Reporters Committee's Application rests on the textual

arguments alone.

Reporters Committee now moves (while the case was stayed) to consolidate this matter

with an application filed by the House Judiciary Committee for the same grand jury information.

That motion should be denied, and this Application instead dismissed without prejudice.[2]

Consolidation here does not serve the interests of judicial economy.  Post-*McKeever*, Reporters

Committee lacks standing to sustain its Application and its textual arguments are wholly without

merit and easily dispatched.  No judicial efficiencies are achieved by permitting a litigant with no

viable claim of its own to participate in the briefing of another matter.

Reporters Committee identifies three textual provisions that it claims can save its

Application post-*McKeever*.  Two such provisions – one governing grand jury information

involving foreign intelligence and the other permitting disclosure of grand jury information to an

attorney for the government for use in performing that attorney's duty – are not even within the

Court's authority to authorize.  The Court may authorize disclosure only for the five reasons

listed in Rule 6(e)(3)(E).  In any event, those provisions are keyed to an "attorney for the

government," a defined term that does not include attorneys for the House of Representatives,

even if Reporters Committee could stand in those attorneys' shoes, which it cannot.

---

[2] The Court can deny or dismiss the Application without prejudice to Reporters Committee
refiling in the event *McKeever* were ever to be altered by a subsequent Supreme Court decision
or an amendment to Rule 6(e).

The only provision of Rule 6(e) under which, in appropriate circumstances, the Court could entertain an application for disclosure – preliminary to or in connection with a judicial proceeding -- is unavailable to Reporters Committee.  Reporters Committee identifies no judicial proceeding in which it has a concrete interest, and no particularized need for the information it seeks.  Potential impeachment proceedings in the House of Representatives, proceedings wholly unconnected to this petitioner, cannot confer standing on Reporters Committee.  And Reporters Committee's generalized interest in transparency -- no different from that of any member of the public – cannot substitute for a showing of particularized need.   Because Reporters Committee's Application cannot stand on its own, consolidation should be denied, and the Application itself dismissed or denied.

## **BACKGROUND**

### A.   **Procedural Background**

Reporters Committee filed the Application at issue on April 1, 2019, over two weeks before the release of the redacted Report to the public.  On April 5, 2019, the D.C. Circuit issued its decision in *McKeever.*  On April 9, 2019, the parties jointly moved for a stay, "in light of the anticipated release of the redacted Special Counsel's Report and any filing of a petition for rehearing or rehearing en banc in *McKeever v. Barr*, No. 17-5149 (D.C. Cir. 2018), events that will inform the legal and factual circumstances of this proceeding."  *See* Joint Motion to Stay, ecf # 9.  The Court granted the motion the next day (Minute Order dated 4/10/19), and granted successive motions to continue the stay on May 13, 2019, and June 12, 2019.  In its last Minute Order, the Court directed the parties to submit, by August 12, 2019, a further request to extend

the stay, or alternatively, to propose a briefing schedule.  On July 22, 2019, the D.C. Circuit denied rehearing en banc in *McKeever*.

On July 26, 2019, the Committee on the Judiciary, House of Representatives ("the Committee"), filed its own application for an order authorizing disclosure to the Committee of grand jury information from the Mueller Report.  The Committee noticed its application as related to the application of Reporters Committee,[3] and both applications are pending before this Court.  Pursuant to a briefing schedule proposed by the parties and entered by the Court, the Department of Justice will respond to the Committee's application by September 13, and the Committee will respond by September 30.

While the stay in the instant matter was still in effect, on August 6, 2019, Reporters Committee moved to consolidate its application with that of the Committee.  The government hereby opposes the motion for consolidation, and, with the lifting of the stay on August 12, 2019, cross-moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[4]

**B.  Legal Background**

**1.  *Consolidation***

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to

---

[3] Whether or not the Committee's application met the standards for related case designation, petitions for the disclosure of grand jury information are assigned to the Chief Judge by Local Rule, *see* Local Crim. Rule 6.1.  Thus, the related case designation had no practical consequence.

[4] Although the Court requested a joint briefing schedule from the parties upon expiration of the stay, Reporters Committee jumped the gun by moving for consolidation and proposing that it follow the briefing schedule governing the Committee application.

avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).  Under this rule, "the Court has

discretion to consolidate civil actions when the cases share common issues of law or fact,

consolidation would serve the interests of judicial economy, and the parties would not be

prejudiced by consolidation." *Judicial Watch, Inc. v. Dep't of Energy*, 207 F.R.D. 8, 8 (D.D.C.

2002); *see also Chang v. United States,* 217 F.R.D. 262, 265 (D.D.C.2003) (same); *Am. Postal

Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 245 (D.D.C. 2006) (same).

### 2. *Criminal Rule 6(e)*

Criminal Rule 6(e)(2)(B) sets out the general rule of grand jury secrecy and provides a

list of "persons" who "must not disclose a matter occurring before the grand jury."  Rule 6(e)(3)

then sets forth a detailed list of "exceptions" to grand jury secrecy, including in subparagraph

(E), five circumstances in which a "court may authorize disclosure ... of a grand-jury matter."

*See generally McKeever*, 920 F.3d at 844-845.  Those five circumstances are as follows:

> (i) preliminarily to or in connection with a judicial proceeding;
>
> (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;
>
> (iii) at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;
>
> (iv) at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or
>
> (v) at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

Crim. R. Fed. P. 6(e)(3)(E).

In any request to obtain grand jury information pursuant to Rule 6(e)(3)(E)(i), "preliminarily to or in connection with a judicial proceeding," a petitioner must make a "strong showing of particularized need." *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 443 (1983); *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, (1979); *United States v. Procter & Gamble,* 356 U.S. 677, 682-83, L (1958); *In re Sealed Case*, 801 F.2d 1379, 1381 (D.C. Cir. 1986).

## ARGUMENT

## I.     CONSOLIDATION WOULD NOT PROMOTE JUDICIAL ECONOMY

Reporters Committee primarily contends that consolidation is appropriate because, while the petitioners are different, "they are asserting identical questions of law against the same defendant." Motion to Consolidate ("Motion") at 6. The petitioners in these two matters, however, are not similarly situated, and do not raise the same questions of law. To start, Reporters Committee relies on two provisions of Rule 6(e) that the Committee does not. Reporters Committee Application, ¶¶ 33-35 (citing Fed. R. Crim. P. 6(e)(3)(D) and 6(e)(3)(A)(i)). Thus, the applicability of those provisions is only at issue here, and not in the Committee's application.

With respect to Fed. R. Crim. P. 6(e)(3)(E)(i), relied on in both applications, Reporters Committee concedes that petitioners are in wholly different positions: Reporters Committee "seeks release of the requested materials to the public at large, in order to ensure transparency, promote governmental accountability, and improve the public's understanding of a significant historical event." Motion at 6. By its own description, Reporters Committee cannot meet the particularized need standard required to seek grand jury records preliminarily to or in connection

with a judicial proceeding.  Indeed, in describing its purpose for seeking the records, Reporters

Committee establishes conclusively that its "need" for the requested information is no different

from that of any member of the public – it alleges no direct injury, but only that it "suffers in

some indefinite way in common with people generally." *Commonwealth of Massachusetts v.

Mellon,* 262 U.S. 447, 488 (1923).  Reporters Committee's lack of injury is only underscored

through its reliance on an alleged impeachment investigation in which it plays no part and has no

direct connection.  For these reasons, and as further explained below, Reporters Committee's

Application on its face is not viable and subject to dismissal.  Consolidation under these

circumstances provides no efficiencies[5] – to the contrary, the most efficient course is for the

Court to deny Reporters Committee's Application at this time.

## II.      REPORTERS COMMITTEE'S APPLICATION IS NOT VIABLE AND SHOULD BE DISMISSED OR DENIED AT THIS TIME

Post-*McKeever*, and stripped of its primary argument, Reporters Committee admits that

its Application now rests on textual grounds alone.  *See* Motion at 2-3 and n.1 ("In light of the

D.C. Circuit's recent decision in *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019), going

forward the Reporters Committee intends to limit its arguments in favor or public access to those

based on Rule 6(e)'s express exceptions to grand jury secrecy.").  Because none of the cited

exceptions to grand jury secrecy applies here, this Application is easily denied.

---

[5]  The only "efficiency" Reporters Committee points to as supporting consolidation is a
combined briefing schedule.  It claims that the Department of Justice can respond to both
applications on September 13, and Reporters Committee can file its own reply on September 30.
*See* Motion at 7.  But a combined briefing schedule is unnecessary in light of the Department's
Motion to Dismiss.  Indeed, with this motion, the Department has now fully responded to
Reporters Committee's Application, and Reporters Committee is free to reply.

**A.  Reporters Committee Identifies No Nexus Between it and Any Judicial Proceeding and No Particularized Need for the Grand Jury Information**

Reporters Committee recites the correct legal standard governing what a petitioner must establish to gain access to grand jury information for use in a judicial proceeding, *see* Application, ¶ 31, but makes no effort to satisfy it.  The only alleged judicial proceeding it identifies is the activities of "[t]he various committees of the House of Representatives investigating the actions arising from the same conduct that spurred the appointment of the Special Counsel …"   Application, ¶ 32.  Reporters Committee, however, has no personal stake in the actions of the House of Representatives, and no individualized connection to those proceedings, and it does not contend otherwise.  Rather, Reporters Committee seems to imagine that its general interest in transparency and release "to the public," Application, ¶ 32, are sufficient to show a particularized need for the information.  Ordinary standing principles, however, as well as the particularity requirement, make clear that a personal interest is required and generalized statements of need will not suffice.  Reporters Committee cannot stand in the shoes of the House Judiciary Committee, nor can it rely on an alleged judicial proceeding with which it has no involvement.

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 573–74 (1992); *see also Fairchild v. Hughes,* 258 U.S. 126, 129–30 (1922); *Massachusetts v. Mellon,* 262 U.S. 447, 488 (1923) (A "party who invokes the power [of judicial review] must be able to show  . . . that he has sustained

or is immediately in danger of sustaining some direct injury . . ., and not merely that he suffers in some indefinite way in common with people generally."); *see also Warth v. Seldin,* 422 U.S. 490, 508, (1975) (noting that a plaintiff "must allege specific concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention"); *Ellis v. Comm'r of Internal Revenue Serv.*, 67 F. Supp. 3d 325, 335 (D.D.C. 2014), *aff'd sub nom. Ellis v. Comm'r*, 622 F. App'x 2 (D.C. Cir. 2015) (same).

These familiar concepts of Article III injury are fully embodied within the requirement that a petitioner seeking the release of grand jury information make a "strong showing of particularized need." *Sells Engineering, Inc.,* 463 U.S. at 443.  The particularized need test imposes an additional criterion on a petitioner:  "It reflects a judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy.  Rather, the Rule contemplates only uses related fairly directly to some identifiable litigation, pending or anticipated," *United States v. Baggot*, 463 U.S. 476, 480 (1983), consistent with the exception's original purpose of "avoid[ing] a possible injustice in another judicial proceeding." *Douglas Oil Co*., 441 U.S. at 222.  It is no surprise, therefore, that a successful petitioner for disclosure of grand jury information under the "judicial proceeding" provision both is personally connected to the judicial proceeding underpinning the petition, and can state with particularity why the information is needed to avoid an injustice.  *See, e.g., Doe v. Cabrera*, 126 F. Supp. 3d 160 (D.D.C. 2015) (holding that disclosure of alleged sexual assault victim's grand jury testimony would aid in avoiding injustice in alleged victim's civil action against alleged perpetrator, where there were inconsistencies between the grand jury testimony and victim's allegations in her civil claim, victim stated she could not recall grand jury testimony with

particularity, and disclosure was required to permit alleged perpetrator to refresh victim's recollection, impeach her credibility, and bolster his defense.)

Reporters Committee, which seeks this information to "ensure transparency, promote governmental accountability and improve the public's understanding of a significant historical event," Motion at 6, cannot plausibly meet this exacting standard.  Its abstract interests in a proceeding unrelated to it are the antithesis of the particularized showing required both to establish Article III injury and need.  Indeed, if Reporters Committee had filed a Freedom of Information Act request for these same records – the appropriate statutory mechanism to vindicate an interest in the transparency of government records – that request would have been denied on the ground that Rule 6(e) exempts the records from disclosure.  Nothing in Rule 6(e)(3)(E)(i) suggests that a different result should obtain merely because Reporters Committee has instead applied directly to this Court under the Criminal Rules.  Reporters Committee's effort to rely on alleged judicial proceedings in which it has no part should be rejected.

**B.   The "National Security Exception" is Not Available to Reporters Committee**

Rule 6(e)(3)(D) provides that "[a]n attorney for the government may disclose grand jury matter involving foreign intelligence, counterintelligence, or foreign intelligence information to any federal law enforcement, intelligence, protective, immigration, national defense or national security official to assist the official receiving the information in the performance of that official's duties."  Fed. R. Crim. P. 6(e)(3)(D).  Reporters Committee argues that members of the House Judiciary and Intelligence Committees and their staffs qualify to receive this information, and that the Court should therefore order disclosure on that basis.  Application, ¶¶ 33-34.  This argument is meritless for numerous reasons.

10

First, the district court is not empowered to order the disclosure of grand jury information under this subsection.  Rather, a court may authorize disclosure only for the five specific reasons set forth in Rule 6(e)(3)(E).  *See* Fed. R. Crim. P. 6(e)(3)(E); *McKeever*, 920 F.3d at 845.

Second, only an "attorney for the government" may disclose foreign intelligence related grand jury information under Rule 6(e)(3)(D).  "Attorney for the government" is a defined term in the Criminal Rules that does not include attorneys working for the House Judiciary and Intelligence Committees.  *See* Fed. R. Crim. P. 1(b)(1) ("Attorney for the Government means: (A) the Attorney General or an authorized assistant; (B) a United States attorney or an authorized assistant; (C) when applicable to cases arising under Guam law, the Guam Attorney General or other person whom Guam law authorizes to act in the matter; and (D) any other attorney authorized by law to conduct proceedings under these rules as a prosecutor.").  Indeed, so restrictive is the foregoing definition that even Department of Justice civil attorneys do not qualify as attorneys for the government.  *Sells Eng'g, Inc*, 463 U.S. at 427 (holding that automatic disclosure of grand jury matters is limited to attorneys who conduct the criminal matters to which the materials pertain); *see also id*. at 428-29 ("Given the strong historic policy of preserving grand jury secrecy, one might wonder why government attorneys are given any automatic access at all.  The draftsmen of the original Rule 6 provided the answer: 'Government attorneys are entitled to disclosure of grand jury proceedings, other than the deliberations and the votes of the jurors, inasmuch as they may be present in the grand jury room during the presentation of evidence. The rule continues this practice.' Advisory Committee's Notes on Federal Rule of Criminal Procedure 6(e)").

11

Finally, Reporters Committee asserts no viable national security rationale of its own, and it cannot stand in the shoes of the House Judiciary and Intelligence Committee attorneys. Thus, even if a court had the discretion to disclose such information (which it does not), and even if House Judiciary and Intelligence Committee attorneys were themselves attorneys for the government within the meaning of the Rule (which they are not), Reporters Committee's Application on this ground would still fail.

### C.   The "Government Attorney" Provision is Not Applicable

Reporters Committee argues that its application is also warranted under Rule 6(e)(3)(A), which permits disclosure of a grand jury matter, other than the grand jury's deliberations or vote, to "an attorney for the government for use in performing that attorney's duty." Fed. R. Crim. P. 6(e)(3)(A)(i). *See also* Fed. R. Crim. P. 6(e)(3)(A)(ii). According to Reporters Committee, the "government attorney exception applies to the cadre of attorneys that serve and represent the House of Representative and, unquestionably, the members of the House they serve constitute 'government personnel' that those attorneys can … assist in performing that attorney's duty to enforce federal criminal law." Application, ¶ 35.

For the same reasons explained in connection with the "national security" provision, Reporters Committee's argument fails. Rule 6(e)(3)(A) falls outside of those categories for which a court may authorize disclosure, *see* Fed. R. Crim. P. 6(e)(3)(E). Attorneys for the House of Representatives are not attorneys for the government for purposes of the Criminal Rules, and Reporters Committee itself cannot be an attorney for the government. *See* Fed. R. Crim. P. 1(b)(1); *Sells Eng'g, Inc.*, 463 U.S. at 427. And Reporters Committee cannot in any event stand

in the shoes of the House of Representatives.  The "government attorney" provision of Rule 6(e) is simply inapplicable here.

### D.   The First Amendment Does Not Require Disclosure

Reporters Committee's final argument -- that it has a First Amendment interest in receiving information from a willing speaker, *i.e.*, the House of Representatives -- is similarly frivolous.  Protected grand jury information is not akin to a gag order, and the cases that Reporters Committee cites are wholly inapt.  *See* Application, ¶¶ 36-37 (citing cases). Moreover, by its own admission, Application, ¶ 37, the House of Representatives does not have the requested information, and whatever willingness it may have to share the information is therefore irrelevant.  Reporters Committee's argument reduces to nothing more than a plea on behalf of the House, not itself.  *See* Application, ¶ 37 ("[I]f the House obtains the grand jury material . . . it would willingly share that information with members of the public, including Reporters Committee.  The Court should allow the House to do so.").

As to any direct claim under the First Amendment, the law is abundantly clear that there is no First Amendment right to grand jury information.  *See In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499 (D.C. Cir. 1998) (holding that it is a settled proposition that there is no First Amendment right of access to grand jury proceedings, as "since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye.").  Accordingly, this remaining rationale in support of disclosure should also be rejected.

## **CONCLUSION**

For all the reasons stated above, the Court should deny the Motion for Consolidation and dismiss the application without prejudice.

Dated: August 12, 2019                           Respectfully submitted,

                                                 JOSEPH H. HUNT
                                                 Assistant Attorney General


                                                 /s/ *Elizabeth J. Shapiro*
                                                 ELIZABETH J. SHAPIRO
                                                 (DC. Bar No. 418925)
                                                 Civil Division, U. S. Dept. of Justice
                                                 JONATHAN I. KRAVIS
                                                 Assistant United States Attorney
                                                 Washington, DC 20530
                                                 Phone: (202) 514-5302
                                                 Fax: (202) 616-8470
                                                 Email: Elizabeth.Shapiro@usdoj.gov