**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| *In re:*<br><br>*Application of the Reporters Committee for Freedom of the Press for an Order Authorizing the Release of Grand Jury Material Cited, Quoted, or Referenced in the Report of Special Counsel Robert S. Mueller III* | Case: 1:19-mc-00045<br>Chief Judge Beryl A. Howell |

## REPLY TO GOVERNMENT'S OPPOSITION TO THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS' MOTION TO CONSOLIDATE

Consolidation of matters presenting common legal issues is especially warranted when, as here, both the House Judiciary Application and the Reporters Committee Application "arise from the same series of events or facts." *Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009); *see also Rankin v. Shayne Bros.*, 234 F.2d 35, 39 (D.C. Cir. 1956) ("Since there were common questions of fact the consolidation was permissible under Rule 42(a).").[1] Both applications arise out of the investigation of Special Counsel Robert S. Mueller III into whether Russia interfered in the 2016 presidential election, whether President Trump or members of his presidential campaign conspired with Russia, and whether the President obstructed justice, and the resultant report delivered to Attorney General William Barr in March 2019. Both applications "involve review of the same underlying decision" by Attorney General Barr to withhold portions of the Special Counsel's report and underlying materials. *Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 13 (D.D.C. 2001). And both applications ask this Court to direct the Attorney General and the Department of Justice ("DOJ") to release an unredacted

---

[1] Abbreviations in this reply brief conform to the definitions set forth in the Reporters Committee's opening brief.

version of the Special Counsel's report, as well as transcripts, exhibits, or other grand jury materials cited, quoted, or referenced in it. Consolidation unquestionably makes sense from the standpoint of judicial economy and efficiency. Combining these two proceedings will greatly assist the Court, allowing it to have all relevant arguments for disclosure of Rule 6(e) material before it, with full briefing on these issues, at the same time.

In opposition to consolidation, the Department of Justice bypasses almost entirely the considerations relevant to a consolidation motion and instead advances two manifestly incorrect arguments. *First*, DOJ asserts that the applications do not raise identical issues of law, because the "Reporters Committee relies on two provisions of Rule 6(e)"—the national security exception and the government attorney exception—that the House Judiciary Committee does not. Opp. at 6. But there is no requirement that *all* legal arguments in two cases must be identical for consolidation to be appropriate. In *Hanson v. District of Columbia*, for example, the court granted a motion to consolidate two actions, one of which involved only "a narrow challenge to the constitutionality" of a District of Columbia rule prohibiting certain handguns from being manufactured or sold in the District, while the other action also challenged "a host of other aspects of the District's gun laws." 257 F.R.D. at 22. The applications at issue here are far more related than the proceedings at issue in *Hanson*.

*Second*, DOJ asserts that the Reporters Committee and the House Judiciary Committee are not "similarly situated," because the Reporters Committee's injury is purportedly not "direct." Opp. at 6. But, again, there is no requirement that the parties be "similarly situated"; "identity of the parties is not a prerequisite" to consolidation, and consolidation is appropriate when different plaintiffs challenge the same defendant on a common legal ground. *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 286

(D.D.C. 2011) (Howell, J.); *accord Judicial Watch, Inc. v. U.S. Dep't of Energy*, 207 F.R.D. 8, 9 (D.D.C. 2002). In any event, the Reporters Committee, like the House Judiciary Committee, *is* directly injured by the lack of disclosure, *see infra*, and both applicants *are* "similarly situated" insofar as both seek access to the same documents, from the same defendant.

Instead of focusing on the relevant considerations—whether the Court, the parties, and the public would benefit from the consolidation of this proceeding with that relating to the House Judiciary Committee's Application—the DOJ dedicates the bulk of its opposition brief to arguing that the Reporters Committee's Application should be dismissed or denied. Those arguments are wrong and, in any event, not relevant to consolidation.

*First*, DOJ is simply wrong in arguing that the Reporters Committee lacks standing. Local Criminal Rule 57.6 permits "[a]ny news organization or other interested person" to file an application requesting access to court records in criminal cases. D.C. Dist. L. Cr. R. 57.6. As this Court has recognized, "[t]ransparency, particularly when it comes to judicial proceedings, is very important," *In re Grand Jury Subpoena 7049*, No. 18-gj-41 (Howell, C.J.), 3/27/19 Hearing Tr. at 16, and the Reporters Committee plays an important role in advocating for such transparency. The press has a constitutional right of access to judicial proceedings, *see, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion); *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017)—including pre-trial proceedings, *see United States v. Edwards*, 430 A.2d 1321, 1344 (D.C. 1981)—and has a "First Amendment interest in receiving information from willing speakers" (in this case, the House of Representatives), *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995). *See also Stephens v. Cty. of Albemarle, Va.*, 524 F.3d 485, 492 (4th Cir. 2008) (providing that a plaintiff has "standing to assert a right to receive speech" by "show[ing] that there exists a

speaker willing to convey the information to her"). Federal courts in D.C. have routinely recognized that the press has standing to challenge the denial of access to court records and proceedings. *See, e.g.*, *Globe Newspaper Co. v. Super. Ct. of Norfolk Cty.*, 457 U.S. 596, 609 n.25 (1982); *see also Mokhiber v. Davis*, 537 A.2d 1100, 1108 (D.C. 1988). Simply put, "[a]s a member of the public, [the Reporters Committee] has standing to assert [its] claim to" grand jury material because such material is "public records to which the public may seek access, even if that effort is ultimately unsuccessful . . . ." *Carlson v. United States*, 837 F.3d 753, 757–58 (7th Cir. 2016).

In being deprived of access to information that it seeks on behalf of journalists and the public, the Reporters Committee suffers a clear injury-in-fact. *See Citizens for Responsibility and Ethics in Wash. v. Exec. Off. of President*, 587 F. Supp. 2d 48, 58–61 (D.D.C. 2008) (holding that researchers had alleged an injury-in-fact based on the denial of access to government records that they sought in order to "disseminate" and "ma[k]e [them] available to the public"); *Pub. Emps. for Envtl. Responsibility v. U.S. Dep't of Commerce*, 968 F. Supp. 2d 88, 96 (D.D.C. 2013) ("Just as a party is not required to have a personal stake in agency information in order to request the information, the party is not required to have such a stake in order to challenge the agency's denial of the request."); *see generally Zerilli v. Smith*, 656 F.2d 705, 711 (D.C. Cir. 1981) (noting that "the press' function as a vital source of information is weakened whenever the ability of journalists to gather information is impaired," as it is by the Attorney General's refusal to disclose the unredacted report and underlying grand jury materials). That injury-in-fact can be remedied by providing the redacted material in the Report to a willing speaker, *Taylor*, 56 F.3d at 1508, or by authorizing the use of such material in a public proceeding such as the House of Representatives' impeachment proceedings. *See* Fed. R.

4

Crim. P. 6(e)(3)(E)(i). By definition, public access—recognized as "fundamental to a democratic state," *United States v. Hubbard*, 650 F.2d 293, 315 n.79 (D.C. Cir. 1980)—applies to the public at large. The government's position—that journalists, who seek information in order to disseminate it to the public at large, do not face a particularized injury—would vitiate not only the unsealing application process provided for under Local Criminal Rule 57.6 but the entire public access doctrine, on which the press has relied for decades.

*Second*, and more generally, the DOJ's arguments, both as to standing and as to the merits, are inappropriate for consideration at this stage. No briefing schedule has been set for the Reporters Committee's Application. Pursuant to Local Civil Rule 7, the Reporters Committee has until August 26, 2019 to respond to the government's motion to dismiss or deny its application. The Reporters Committee will therefore respond to DOJ's merits arguments in due course and reserves all rights to address the merits of the DOJ's arguments at the appropriate time.[2]

## CONCLUSION

For the foregoing reasons, and the reasons explained in our August 6, 2019 motion to consolidate, this Court should consolidate the House Judiciary Application with the Reporters Committee Application and place both proceedings on the same briefing track.

---

[2] DOJ's position on the merits is largely a regurgitation of its position on standing. That position is wrong. If this Court directs the release of grand jury material to Members of the House of Representatives or those attorneys assisting the House of Representatives in "prosecuting" the President through impeachment proceedings, the Reporters Committee can vindicate the public's interest in accessing the redacted material in the Report. DOJ's argument to the contrary seeks to vitiate the right of public access—a right that is inherently a "generalized grievance" and to which the "generalized grievance" standing cases manifestly do not apply. *See* Opp. at 8–9 (citing cases irrelevant to the public's right of access).

Dated: August 19, 2019

Respectfully submitted,

/s/ THEODORE J. BOUTROUS
THEODORE J. BOUTROUS
DC Bar No. 420440
THEANE EVANGELIS (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
(213) 229.7000
tboutrous@gibsondunn.com

AMIR C. TAYRANI
DC Bar No. 490994
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955.8500
atayrani@gibsondunn.com

LEE R. CRAIN (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York City, New York
(212) 351.2454
lcrain@gibsondunn.com

BRUCE D. BROWN
D.C. Bar No. 457317
KATIE TOWNSEND
D.C. Bar No. 1026115
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
bbrown@rcfp.org
ktownsend@rcfp.org

*Counsel for Applicant the Reporters Committee for Freedom of the Press*