## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

*In re:*

*Application of the Reporters Committee for Freedom of the Press for an Order Authorizing the Release of Grand Jury Material Cited, Quoted, or Referenced in the Report of Special Counsel Robert S. Mueller III*

Case: 1:19-mc-00045
Chief Judge Beryl A. Howell

## MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S CROSS-MOTION TO DISMISS OR DENY THE APPLICATION WITHOUT PREJUDICE

The Reporters Committee for Freedom of the Press ("Reporters Committee") respectfully submits this memorandum of law in opposition to the Department of Justice's cross-motion to dismiss or deny the Reporters Committee's Application for an Order Authorizing the Release of Grand Jury Material Cited, Quoted, or Referenced in the Report of Special Counsel Robert S. Mueller III, filed on April 1, 2019 (the "Application").

## INTRODUCTION

Instead of releasing the Mueller Report to the fullest extent possible, the Department of Justice (or "Justice Department") determined that it was required to redact broad swaths of it pursuant to Federal Rule of Criminal Procedure 6(e). According to the Department of Justice, it had no choice but to keep large portions of the Report—some 38 percent of the redacted material—hidden from public view pursuant to Rule 6(e). Alvin Chang & Javier Zarracina, *The Mueller Report Redactions, Explained in 4 Charts*, Vox (Apr. 19, 2019), https://www.vox.com/2019/4/19/18485535/mueller-report-redactions-data-chart.

Yet Rule 6(e)'s general secrecy obligation is not an unlimited, inexorable command.  A number of limitations and exceptions to Rule 6(e) exist and apply here.  Rule 6(e) authorizes disclosure of the grand jury material at issue to the public and, at the very least, to certain recipients, including Members of the House of Representatives, who are in turn, under the plain language of Rule 6(e), permitted to share that material with the public.  Indeed, Rule 6(e)(2) makes clear that Rule 6(e)'s non-disclosure obligation does not apply to Members of Congress, and thus cannot prevent them from sharing any information they procure under several of Rule 6(e)'s exceptions.  That is why the Reporters Committee brings this application and why it should prevail.

Instead of recognizing Rule 6(e)'s exceptions, the Justice Department asks this Court to reject the Application largely because, it says, the Reporters Committee lacks standing.  In doing so, the Justice Department asks this Court to bypass decades of case law, judicial practice, and this Court's own local rules to keep secret as much of the Mueller Report as possible.  The Justice Department's arguments should be rejected.  The Reporters Committee has an informational injury—one that other members of the public also share—and it is well established that an organization with such an injury has standing to attempt to remedy it.  Indeed, even if no Rule 6(e) exceptions ultimately apply here—and the Justice Department makes almost no attempt to support of that proposition—the Reporters Committee at the very least has standing to argue that they do.

At bottom, the Department of Justice has made very clear that it is keeping broad swaths of the Mueller Report and its supporting documents secret because it believes Rule 6(e) requires it to do so.  This Court can, and should, tell the Department of Justice that it is mistaken and direct it to unseal the redacted material generally or, at least, to Members of the House of

Representatives pursuant to the applicable exceptions to Rule 6(e)'s general secrecy command. Each exception the Reporters Committee invokes—the judicial proceedings exception, the national security exception, and the government attorney exception—authorizes the disclosure of this vital grand jury material to the public, either directly or through the House of Representatives.

This Court should grant the Reporters Committee's Application and deny the motion to dismiss. It should direct the Department of Justice to make the material in the Mueller Report and its supporting documents that was redacted pursuant to Rule 6(e) public or, at least, available to the House of Representatives. The Reporters Committee further urges the Court to make clear that Rule 6(e)(2) does not allow for any prohibition on Members of the House from sharing that information with the public.

## ARGUMENT

## I.     THE COURT SHOULD DIRECT UNSEALING PURSUANT TO THE JUDICIAL PROCEEDINGS EXCEPTION

Rule 6(e)(3)(E)(i) empowers courts to "authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). As the Department of Justice concedes, Gov't Cross-Mot. at 8, a party seeking grand jury materials under this exception must show only that it (1) has a particularized need to use those materials (2) preliminarily to or in connection with (3) a judicial proceeding. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 442–43 (1983); *see also United States v. Baggot*, 463 U.S. 476, 480–81 (1983). The Reporters Committee's Application readily satisfies each of these elements.

### A.     House Investigations Regarding Impeachment Are "Preliminary To" A "Judicial Proceeding"

The investigations by various House committees into possible election interference and the involvement of the President—the same conduct that spurred the appointment of the Special Counsel—are "preliminar[y] to" a "judicial proceeding" within the meaning of Rule 6(e)(3)(E)(i). The Justice Department does not—and indeed *could not*—meaningfully contend otherwise. *See* Gov't Cross-Mot. at 8–10 (arguing only that the Reporters Committee "has no personal stake" in these investigations).

"The term judicial proceeding has been given a broad interpretation by the courts." *In re Sealed Motion*, 880 F.2d 1367, 1379 (D.C. Cir. 1989) (per curiam). The term includes more than just criminal trials. *See id.* at 1379 & n.16 (noting the broad set of circumstances in which disclosure is warranted under the judicial proceedings exception, including state disbarment proceedings and police disciplinary proceedings); *see also, e.g.*, *In re North*, 16 F.3d 1234, 1244 (D.C. Cir. Spec. Div. 1994) (applying the judicial proceedings exception to court's own determination of whether to release grand jury material contained in an Independent Counsel's report). Moreover, the grand jury material sought need not relate to a judicial proceeding that is already underway; it need only relate "to some identifiable" proceeding that is "pending *or anticipated*." *Baggot*, 463 U.S. at 480 (emphasis added).

Recognizing that the United States Senate constitutionally "exercises the judicial power of trying impeachments," *Kilbourn v. Thompson*, 103 U.S. (13 Otto) 168, 191 (1880), federal courts have concluded that legislative impeachment proceedings are "judicial proceedings" within the meaning of Rule 6(e). For example, in a decision that was affirmed by the Eleventh Circuit, the Southern District of Florida easily concluded that an impeachment resolution against a federal judge qualifies as a judicial proceeding. *See In re Grand Jury Proceedings of Grand*

*Jury No. 81-1 (Miami)*, 669 F. Supp. 1072, 1075–76 (S.D. Fla. 1987) ("There can be little doubt

that an impeachment trial by the Senate is a 'judicial proceeding' in every significant sense."),

*aff'd sub nom. In re Request for Access to Grand Jury Materials Grand Jury No. 81-1 Miami*,

833 F.2d 1438, 1440–41 (11th Cir. 1987); *see also United States v. Salanitro*, 437 F. Supp. 240,

243 (D. Neb. 1977) (holding that state impeachment proceedings fell within the scope of the

term "judicial proceedings").  In so holding, the court gave effect to the intention of the Framers,

who—as evidenced by the Constitution's text—"considered impeachment to be judicial in

nature." *In re Grand Jury*, 669 F. Supp. at 1076.[1]

Courts have also specifically concluded that "a House investigation preliminary to

impeachment is within the scope of the Rule." *Id.*  In 1974, a court in this district ordered

disclosure of the Watergate grand jury report to the House Judiciary Committee for its

consideration in investigating the possible impeachment of President Nixon.  *In re Report &*

*Recommendation of June 5, 1972 Grand Jury Concerning Submission of Evidence to the House*

*of Representatives*, 370 F. Supp. 1219, 1230 (D.D.C. 1974).  With respect to the judicial

proceedings exception, the court noted that "it seems incredible that grand jury matters should

lawfully be available" in disbarment proceedings and police disciplinary investigations but not

"in a proceeding of so great import as an impeachment investigation." *Id.*; *see also id.*

(describing the House Judicial Committee as "a body that in this setting acts simply as another

grand jury").  The D.C. Circuit denied the subsequent petition for mandamus, expressing

---

[1]  This Court has suggested that "[c]onsideration by the House of Representatives, even in connection with a
constitutionally sanctioned impeachment proceeding, falls outside the common understanding of
'a judicial proceeding.'" *In re Unseal Dockets Related to Indep. Counsel's 1998 Investigation of President
Clinton*, 308 F. Supp. 3d 314, 318 n.4 (D.D.C. 2018) (citing *In re Petition to Inspect & Copy Grand Jury
Materials*, 735 F.2d 1272 (11th Cir. 1984), which held that a circuit council investigation was nonetheless
sufficiently "akin" to a judicial proceeding to permit unsealing).  Notably, the Justice Department does not take
that position here.  In any event, the Court's consideration of impeachment proceedings was dicta, as *In re
Unseal Dockets* focused on the application of the Court's pre-*McKeever* inherent authority to unseal grand jury
records outside the confines of Rule 6(e)'s enumerated exceptions.

"general agreement" with the district court's analysis and decision to authorize disclosure so that the Judiciary Committee could investigate "possible grounds for impeachment." *Haldeman v. Sirica*, 501 F.2d 714, 715 (D.C. Cir. 1974) (en banc); *see id.* at 717 (MacKinnon, J., concurring) (joining the majority opinion based on prosecutor's representation that the disclosure was being made "preliminary to (and) in connection with a judicial proceeding").[2]

As in *Haldeman* and *In re Grand Jury*, the current investigations into election interference by various committees of the House of Representatives are "preliminar[y] to" a judicial proceeding because the committees are considering whether to recommend articles of impeachment.[3]  The House's use of the grand jury material would "relate[] fairly directly to" the anticipated impeachment proceeding, *Baggott*, 463 U.S. at 480, which is judicial in nature. Indeed, it pertains to the very inquiries Congress will make as part of those proceedings:  the nature of the President's conduct during and after his 2016 campaign, and any evidence of criminality or lack thereof.  Under any fair reading of Rule 6, the judicial proceedings exception applies here.

### B.     The Reporters Committee Has A Particularized Need For The Redacted Material

The Department of Justice does not meaningfully dispute that the judicial proceedings exception applies on its face.  Instead, it contends that the Reporters Committee "has no personal stake" in the House's impeachment proceedings and that the Reporters Committee lacks standing for what the Department of Justice claims is a generalized grievance.  Gov't Cross-Mot. at 8–10. Not so.

---

[2]   Although *Haldeman* could be read as an application of the judiciary's inherent authority to unseal grand jury material, *see McKeever v. Barr*, 920 F.3d 842, 854 (2019) (Srinivasan, J., dissenting), *pet. for reh'g denied*, No. 17-5149 (July 22, 2019), the D.C. Circuit recently clarified that *Haldeman* should be read to "fit within the Rule 6(e) exception for 'judicial proceedings,'" *id.* at 847 n.3, 853.

[3]   *See* House Judiciary Appl. at 3, 26–34.

The Reporters Committee has a "particularized need" for the requested material to facilitate its long-standing support of journalists' newsgathering activities, as well as its own efforts to ensure government transparency.  Over its 50-year history, the Reporters Committee has been dedicated to protecting the public's right of access to documents and proceedings that the government would prefer to keep hidden from public view.  Indeed, if the Reporters Committee lacks an interest in access to the redacted material from the Mueller Report—material of vital interest to every citizen in this nation—it is difficult to see who *would* have standing to vindicate that interest.[4]  The Justice Department's arguments to the contrary are not persuasive.

While the Department of Justice invokes "[o]rdinary standing principles" and the "familiar concepts of Article III injury," Gov't Cross-Mot. at 8–9, both resoundingly defeat its standing argument.  Simply put, the Reporters Committee's inability to access the materials it has requested pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, constitutes an "injury in fact" for standing purposes.  Tellingly, the Department of Justice cites no authority addressing standing in an analogous context, even though "a plaintiff's standing cannot be examined without reference to the 'nature and source of the claim asserted.'"  *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 461 (4th Cir. 2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).  And in the context at issue here—a statutory request for access to government records—the Supreme Court has long held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 524 U.S. 11, 21 (1998).  Indeed, "a denial of access to information can work an 'injury in fact' for standing purposes, at least where a statute (on the claimants' reading) requires that

---

[4]   The Department of Justice cannot claim that the House would have standing to vindicate the public's interest, where it has already argued, in effect, that the Reporters Committee and the House cannot stand in each other's shoes.  *See* Gov't Cross-Mot. at 8, 12–13.

the information be publicly disclosed and there is no reason to doubt their claim that the information would help them." *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011) (some internal quotation marks omitted); *see also, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 264 (4th Cir. 2014) ("[I]nformational interests, though shared by a large segment of the citizenry [are] sufficiently concrete to confer Article III standing when they sought and were denied access to the information that they claimed a right to inspect."); *McFarlane v. First Unum Life. Ins. Co.*, 274 F. Supp. 3d 150, 161 (S.D.N.Y. 2017) ("[A] plaintiff suffers a sufficiently concrete injury to confer Article III standing when she is denied access to information that, in the plaintiff's view, must be disclosed pursuant to a statute and when there is 'no reason to doubt' that the information would help the plaintiff within the meaning of the statute." (quoting *Akins*, 524 U.S. at 21)).[5]

The Reporters Committee has plainly satisfied this standard for Article III injury, which the Department of Justice urges this Court to apply in construing the "particularized need" requirement of Rule 6(e)(3)(E).  *See* Gov't Cross-Mot. at 9–10.  As the Reporters Committee has explained, Rule 6(e) is no impediment to providing the Reporters Committee the redacted material in the Report, which the Reporters Committee requested pursuant to FOIA.  Appl. ¶¶ 3, 30–35; *see supra* p. 7.  And far from asserting a "general" grievance, Gov't Cross-Mot. at 8, the Reporters Committee has explained that access to these materials would promote its demonstrated interest in supporting the newsgathering activities of journalists and in promoting transparency in government, Appl. at 1 & ¶ 3.  That interest takes on particular urgency here,

---

[5] The cases upon which the Justice Department relies, *see* Gov't Cross-Mot. at 8–10, are inapposite, as none addressed whether a party has standing to seek access to information or records.  As noted, it is well settled that "[a] plaintiff may be injured by a defendant's failure or refusal to disclose information that it is required by law to disclose and the disclosure of which would be helpful to the plaintiff."  5 James W. Moore et al., *Moore's Federal Practice* § 101.40 (3d ed. 2015); *see, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982) (concluding that deprivation of information about housing availability was sufficient to constitute an Article III injury).

where disclosure of the requested materials would permit an informed debate not only about the Special Counsel's investigation, but about our foreign policy, national security, and electoral system, *see* Appl. ¶ 20, and where the information is directly relevant to potential impeachment proceedings, *see* House Judiciary Appl. at 3, 26–34.

In the context of this Application, this interest is far from "abstract."  Gov't Cross-Mot. at 10.  The Reporters Committee has administratively appealed the Justice Department's denial of its FOIA request for a complete copy of the Special Counsel's Report, and it has moved this Court to unseal a host of documents related to the Special Counsel's investigation.  *See* Appl. ¶¶ 3 n.2, 11.[6]  By asserting that it is entitled to receive the requested materials under federal law, and by providing "no reason to doubt that the information would help [it]," the Reporters Committee has alleged a sufficient "injury in fact" and "particularized need" to pursue the instant Application.  *Am. Soc. for Prevention of Cruelty to Animals*, 659 F.3d at 22.

More fundamentally, the Department of Justice appears to suggest that federal courts have, for decades, exceeded their Article III jurisdiction by considering requests from members of the public, including the Reporters Committee, for access to judicial records.  That position is untenable.  The right of access to judicial records and proceedings is, of course, afforded to all members of the public—each of whom may assert it.  As the Supreme Court has explained, that right of access "serves to ensure that *the individual citizen* can effectively participate in and contribute to our republican system of self-government."  *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 604 (1982) (emphasis added); *see also Press-Enter. Co. v. Superior Court of Cal. (Press-Enterprise I)*, 464 U.S. 501, 508 (1984) ("[T]he sure knowledge

---

[6]  On May 7, 2019, the Office of Information Policy of the Department of Justice denied the Reporters Committee's FOIA request.  The Reporters Committee timely appealed that decision.  But Attorney General Barr's determination that Rule 6(e) prohibits disclosure makes clear that the Reporters Committee is not likely to succeed in procuring the release of the full Report through FOIA.

that *anyone* is free to attend [a trial] gives assurance that established procedures are being followed and that deviations will become known." (emphasis in original)); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) (explaining that the First Amendment prohibits "the government from limiting the stock of information from which *members of the public* may draw" (emphasis added)).  Contrary to the Justice Department's suggestion, the public nature of a right of access in no way inhibits a citizen's ability to exercise it, for "[t]he fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure . . . does not lessen [a party's] asserted injury." *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989).  Courts have long recognized that "members of the public" have standing to seek access to judicial records, and this Court should decline the Justice Department's disconcerting invitation to break from this tradition.  *Richmond Newspapers*, 448 U.S. at 576.  Simply put, "[a]s a member of the public, [the Reporters Committee] has standing to assert [its] claim to" grand jury material because such material constitutes "public records to which the public may seek access, even if that effort is ultimately unsuccessful." *Carlson v. United States*, 837 F.3d 753, 757–58 (7th Cir. 2016).

The Department of Justice's position, taken at face value, would cast doubt upon Local Rule 57.6 of this Court, which allows "[a]ny news organization" to apply for relief in a criminal case, Local Crim. R. 57.6, without requiring such "news organization[s]" to demonstrate a "personal stake" in the case, Gov't Cross-Mot. at 8.  That simply cannot be right—otherwise no one could vindicate the public's ongoing, ever-present, and fundamental right to access government documents and proceedings.

The Reporters Committee therefore has standing to bring this application for two reasons. *First*, this Court can remedy the Reporters Committee's informational injury by directing

disclosure of the grand jury material to the public, including the Reporters Committee, under the judicial proceedings exception.  The exception gives this Court wide latitude to disclose this material "at a time, in a manner, and subject to any other conditions that it directs."  Fed. R. Crim. P. 6(e)(3)(E).  Public disclosure of information relating to the House's anticipated impeachment proceedings plainly falls within this Court's authority under Rule 6(e) and would remedy the Reporters Committee's injury.

*Second*, the Reporters Committee has standing under the willing speaker doctrine.  Where "a willing speaker" exists, "the protection afforded is to the communication, to its source and to its recipients both."  *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976).  As a consequence, the Reporters Committee can seek release of Rule 6(e) material either to itself directly or through a willing speaker.  The House Judiciary Committee is such a "willing speaker."  As explained in its application, the House Judiciary Committee has demanded the same material, which it is entitled to receive by virtue of, among other things, its investigation into the possible recommendation of impeachment proceedings.  *See* Appl. ¶ 11; House Judiciary Appl. at 3, 26–34.  And the Committee has made clear that it will disclose those materials—indeed, the House of Representatives passed a nearly unanimous resolution stating that the report "should be made available to the public."  H. Con. Res. 24, 116th Cong. (Mar. 7, 2019).

Importantly, Rule 6(e) presents no obstacle whatsoever to this willing speaker releasing the information to which it (and the public) is entitled.  Indeed, Rule 6(e) *prohibits* the Committee from being prevented from doing so.  As this Court recently explained, "Rule 6(e)(2)(B)'s list of who may be bound by an 'obligation of secrecy'" is "exhaustive," *In re Application of USA for an Order Pursuant to 28 U.S.C. § 1651*, No. 19-wr-10, slip op. at 5

(BAH) (Aug. 6, 2019), and does not include the Members of the House of Representatives.

Thus, because recipients of the information—Members of the House—are "willing" to make that

information public, the Reporters Committee has standing to seek an order that would enable it

to obtain the requested material.  *See, e.g.*, *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75

F.3d 834, 838–39 (3d Cir. 1996) (holding that third-party plaintiffs had standing to challenge gag

order, where the subjects of the order "at least were willing to talk at some point" before it was

entered); *In re Application of Dow Jones & Co.*, 842 F.2d 603, 607 (2d Cir. 1988) (holding that

news agencies had standing to challenge gag order, where trial participants were willing

speakers, and that the news agencies were in fact potential receivers of the restrained speech).

Given the Reporters Committee's mission of supporting journalists' newsgathering

activities and government transparency, and its present participation in litigation seeking to shed

light on the Special Counsel's investigation, the Reporters Committee has adequately

demonstrated a "particularized need" for the requested materials, including under the "familiar

concepts of Article III injury" that the Department of Justice asks this Court to apply.  Gov't

Cross-Mot. at 9.

## II.     THIS COURT SHOULD DIRECT UNSEALING PURSUANT TO THE NATIONAL SECURITY AND GOVERNMENT ATTORNEY EXCEPTIONS

The Department of Justice's arguments regarding the national security exception and the

government attorney exception miss the mark.  The bottom line is this:  the Justice Department

has expressly refused to release portions of the Mueller Report and its underlying documents and

used Rule 6(e) as the basis for doing so.  But multiple exceptions to Rule 6(e) apply—including

the national security exception and the government attorney exception.  Consequently, Rule 6(e)

did not, contrary to the Attorney General's views, require the Attorney General to redact this

information.  The Attorney General was authorized to reveal the unredacted language in the

Report to numerous willing speakers pursuant to these exceptions, and those willing speakers were not (and could not be) prohibited from revealing that same material to the public. *In re Application of USA for an Order Pursuant to 28 U.S.C. § 1651*, No. 19-wr-10, slip op. at 5 ("Rule 6(e)(2)(B)'s list of who may be bound by an 'obligation of secrecy'" is "exhaustive.").

This Court should rule that the redacted portions of the Mueller Report and its supporting evidence that fall within the national security and government attorney exceptions can and should be unsealed.  Fed. R. Crim. P. 6(e)(3)(D), 6(e)(3)(A)(ii).

*National Security Exception.*  Each element of the national security exception is satisfied here.  The Department of Justice does not even attempt to argue otherwise.

*First*, as the Justice Department concedes, the person this Court should compel to unseal the material, Attorney General Barr, is an "attorney for the government."  *See* Gov't Cross-Mot. at 11 (conceding that "attorney for the government" includes "the Attorney General or an authorized assistant").  *Second*, the Department of Justice does not deny, nor can it, that the Mueller Report as a whole includes "foreign intelligence, counter intelligence, or foreign intelligence information"—defined in the Rule as any information that relates to an "actual or potential attack or other grave hostile acts of a foreign power of a foreign power or its agent"; "sabotage . . . by a foreign power"; or "clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent.  Fed. R. Crim P. 6(e)(3)(D), (6)(e)(3)(D)(iii)(a).  Indeed, as the Department of Justice concedes, the Report is *titled* "Report On The Investigation *Into Russian Interference* In The 2016 Presidential Election."  Gov't Cross-Mot. at 1 n.1 (emphasis added).  *Finally*, the Justice Department does not deny that Members of the House of Representatives and their staff qualify as, at the very least, "intelligence, protective . . . , national defense, or national security official[s]" competent to receive "foreign

intelligence information."  The Attorney General can, and indeed must, share the redacted

material in the Report with those willing speakers who are permitted to receive it pursuant to this

Rule 6(e) exception.

   ***Government Attorney Exception.***  The government attorney exception applies here, too.

As the Department of Justice recognizes, Rule 6(e) allows disclosure to "an attorney for the

government for use in performing that attorney's duty" or "any government personnel that an

attorney for the government considers necessary to assist in performing that attorney's duty to

enforce federal criminal law."  Fed. R. Crim. P. 6(e)(3)(A)(ii).  The Department of Justice does

not deny that House personnel are "government personnel," and that they have a "necessary"

role to play in investigating criminal conduct by high-ranking governmental officials.  Nor could

it.  The government attorney exception applies:  it allows the Attorney General—a government

attorney—to provide the grand jury information at issue to willing speakers like the House of

Representatives' "government personnel."

   In response to the plain-text application of these exceptions, the Justice Department

advances two meritless arguments.  *First*, it contends that only an "attorney for the government,"

and not this Court, can direct the unsealing of materials under the national security and

government attorney's exception.  *See* Gov't Cross-Mot. at 10–11.  This argument is a

nonsequitur.  The Attorney General has decreed that Rule 6(e) prohibits him from revealing the

redacted material in the Report, but it does not.  If this Court determines that these exceptions

apply, the Attorney General will have no justification for withholding the redacted materials.  He

will be permitted to release it, and the Court may compel him to.  Indeed, that is precisely what

courts do when they direct the unsealing of grand jury records generally.  As the D.C. Circuit

recognized in *McKeever*, this Court has jurisdiction over the Attorney General and can compel

him to unseal grand jury information:  "Rule 6 assumes the records are *in the custody of the Government*, not that of the court.  When the court authorizes their disclosure, it does so by ordering 'an attorney for the government' who holds the records to disclose those materials." *McKeever*, 920 F.3d at 848 (emphasis added).[7]  This Court can issue such an order here.

     *Second*, the Department of Justice argues that the Reporters Committee "cannot stand in the shoes of the House Judiciary and Intelligence Committee attorneys."  Gov't Cross-Mot. at 8. But that argument is as meritless as its standing position.  Even if the Reporters Committee cannot "stand in" the House's "shoes," the ability of Members of the House of Representatives to obtain this material will allow the Reporters Committee to vindicate its informational injury. That injury will be remedied when the Court directs the Attorney General to convey the sealed material to willing speakers who are free to—and have indicated they will—disclose it.  *See supra* p. 11.

## III.   THIS COURT SHOULD DIRECT THE UNSEALING OF ANY MATERIAL IMPROPERLY REDACTED PURSUANT TO RULE 6(E)

     Rule 6(e) prohibits disclosure of "a matter occurring before the grand jury" and nothing more.  *See* Appl. ¶ 21.  As this Court has explained, "[t]he default cloak of secrecy that applies to grand jury matters may be lifted by the Court, either *sua sponte* or on the motion of any person, to make public '[p]apers, orders and transcripts of hearings' related to a grand jury subpoena 'upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury.'"  *In re Grand Jury Subpoena No. 7409*, No. 18-41 (BAH), 2019 WL

---

[7]  And historically, even if grand jury records fell within the legal "custody" of the government, they have long been understood as records of the courts themselves.  *See, e.g.*, *United States v. Proctor & Gamble*, 356 U.S. 677, 684-85 (1958) (Whittaker, J., concurring) ("Grand jury minutes and transcripts are not the property of the Government's attorneys, agents or investigators," but "are records of the court."); *Carlson*, 837 F.3d at 758–59 (noting that grand jury records are "records of the court"); *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 31 (2d Cir. 1981) ("[G]rand jury materials are traditionally the records of the Judicial Branch."); *United States v. Penrod*, 609 F.2d 1092, 1097 (4th Cir. 1979); *Standley v. Dep't. of Justice*, 835 F.2d 216, 218 (9th Cir. 1987).  *McKeever* did not hold to the contrary.  920 F.3d at 847–48.

2169265, at *2 (D.D.C. Apr. 1, 2019) (citing Local Crim. R. 6.1).  This Court is therefore free to direct unsealing of information that does not "compromis[e] matters occurring before the grand jury."  *Id.* at *3; *see also In re Motions of Dow Jones & Co.*, 142 F.3d 496, 505 (D.C. Cir. 1998) (vacating and remanding for district court to consider whether material that will not reveal the secrecy of a matter occurring before the grand jury may be released in redacted form).

As the Reporters Committee's Application explains, disclosure of grand jury material to the public vitiates the need for grand jury secrecy.  "[E]ven partial previous disclosure often undercuts many of the reasons for secrecy."  *In re Craig*, 131 F.3d 99, 107 (2d Cir. 1997); *see In re Unseal Dockets*, 308 F. Supp. 3d at 322 ("[G]rand jury secrecy is not unyielding when there is no secrecy left to protect." (internal quotation marks and citation omitted)); *see also In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154-55 (D.C. Cir. 2007) (ordering the "release [of] those redacted portions of [the] concurring opinion and the two ex parte affidavits that discuss grand jury matters" where "the 'cat is out of the bag'" given that one grand jury witness "discuss[ed] his role on the CBS Evening News"); *Dow Jones*, 142 F.3d at 505 (noting that when grand jury witness's attorney "virtually proclaimed from the rooftops that his client had been subpoenaed," that fact was no longer protected by grand jury secrecy); *In re North*, 16 F.3d at 1245 (noting that "information widely known is not secret" and "when information is sufficiently widely known" it "los[es] its character as Rule 6(e) material"); Local Crim. R. 6.1 (authorizing disclosure of grand jury material where secrecy is no longer "necessary").

The Reporters Committee unquestionably has standing to seek the release of such information, *see supra* pp. 6–12, and—particularly given the government's penchant for overredaction, *see* Order, *In re Grand Jury Subpoena*, No. 18-3071 (Apr. 23, 2019) at 1 ("[W]e have 'rigorously scrutinized'" the government's "redactions . . . and identified additional

information that appears unlikely to reveal a matter occurring before the grand jury") —this Court should examine closely the Report's redactions to determine whether they truly risk disclosure of "a matter occurring before the grand jury," *see* Local. Crim. R. 6.1.  This Court should direct the unsealing of any redacted material in the Report and its supporting documents that does not disclose "a matter occurring before the grand jury" or is not "necessary" to preserving the secrecy of a matter before the grand jury.[8]

## CONCLUSION

For the foregoing reasons, the Court should deny the Justice Department's cross-motion to dismiss or deny the Reporters Committee's Application and grant the Application, directing the Attorney General to release to the Reporters Committee those materials in the Mueller Report and its supporting evidence that he claims Rule 6(e) requires be kept secret or, alternatively, to provide such material to the House of Representatives such that Members of that House, willing speakers, may release those materials to the public.

Dated:  August 29, 2019

Respectfully submitted,

/s/ *Theodore J. Boutros*
THEODORE J. BOUTROUS
DC Bar No. 420440
THEANE EVANGELIS (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
(213) 229.7000
tboutrous@gibsondunn.com

---

[8]  Although the Reporters Committee contended in its Application that the unsealing of already-disclosed information or information that does not disclose "a matter before the grand jury" related to the Court's inherent authority, *see* Appl. ¶¶ 21–23, that argument remains equally viable under Rule 6(e)'s text, which makes plain that the Rule does not require secrecy of information that does not reveal "a matter occurring before the grand jury."  *See McKeever*, 920 F.3d at 847 n.3 (construing pre-*McKeever* precedent consistent with the text of Rule 6(e) even where that precedent did not expressly analyze the Rule's text).

AMIR C. TAYRANI
DC Bar No. 490994
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955.8500
atayrani@gibsondunn.com

LEE R. CRAIN (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York City, New York 10166
(212) 351.2454
lcrain@gibsondunn.com

BRUCE D. BROWN
D.C. Bar No. 457317
KATIE TOWNSEND
D.C. Bar No. 1026115
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
bbrown@rcfp.org
ktownsend@rcfp.org

*Counsel for Applicant the Reporters Committee
for Freedom of the Press*